*In re* MARRIAGE OF WILLIAM SMITH, Petitioner-Appellant, and SHARON SMITH, n/k/a Sharon Bain, Respondent-Appellee.

Second District    No. 2—03—0183

Opinion filed March 25, 2004.

James A. Maloney, of James A. Maloney & Associates, of Loves Park, and Brent D. Blair, of Martenson, Blair & Raridon, P.C., of Rockford, for appellant.

Donald E. Ray, of Rockford, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Petitioner, William Smith, appeals from the order of the circuit court granting respondent, Sharon Smith, a judgment of $60,000 for overdue child support. William argues that Sharon offered inadequate evidence of his nonpayment of the arrearage. He further argues under the theory of equitable estoppel that he fulfilled his obligation by paying support until Sharon told him that he no longer needed to do so. Finally, William contends that the doctrine of *laches* precluded Sharon from waiting several years before petitioning for overdue support. We affirm.

## FACTS

The marriage was dissolved on June 24, 1983, and Sharon was granted custody of the couple's three daughters. The judgment incorporated a marital settlement agreement under which William agreed to pay maintenance and child support. William agreed to two child support increases, which took effect on March 2, 1984, and August 24, 1988. The trial court entered orders to reflect the modifications, and Sharon did not allege at these times that William owed overdue support. By all accounts, the parties had a polite relationship and cooperated in raising the children. Each party remarried, and the new spouses participated in the children's events.

On March 22, 2001, Sharon petitioned for (1) an increase in prospective child support; (2) payment of overdue support; and (3) contribution for the children's post-secondary education costs and uninsured orthodontic expenses. Only the support arrearage is at issue in this appeal. William argued at trial that the doctrine of *laches* precluded Sharon from waiting several years before petitioning for overdue support. He further argued under the theory of equitable estoppel that he fulfilled his obligation by paying support until Sharon told him in November 1997 that he no longer needed to do so.

At the hearing on the petitions, Sharon testified that William owed $60,520 in overdue child support from the date of the dissolution to the date she filed her petition. Sharon relied on her "best recollection" to create a "guesstimate" of the arrearage because she did not have records of all of the payments William made. Sharon assisted her

attorney in preparing a document summarizing William's payments, and she suspected that she actually overestimated the amount he paid. Sharon denied telling William that he was not required to pay support. Two of the couple's daughters lived with William for a few months after 1997.

William's mother, Joanne, testified that she overheard the November 1997 conversation in which Sharon told William that he no longer needed to pay support because he was purchasing many things for the children and his business was failing. William and Sharon spoke on Sharon's driveway while Joanne sat in the passenger seat of a car with her window rolled down.

William's current wife testified that, since she met Sharon in 1999, Sharon never mentioned the support obligation even though they spoke "every couple of weeks." In early 2001, William attempted to annul his marriage to Sharon so that he and his current wife could be married in a Catholic ceremony. Sharon and the children stopped communicating with William after she learned of the annulment proceedings.

William testified that he paid his entire support obligation until November 1997, when Sharon told him that he no longer needed to pay if he continued to provide other items for the children. William did not contact an attorney or file a petition to terminate support, because he "trusted her and *** didn't think anything would come of it." William presented copies of cancelled checks that represented $24,790 in support payments he made before February 1991. The checks did not account for all of his payments because he frequently paid with cash or money orders. More than 100 checks were unavailable because they had been stolen from his storage shed in October 2000. William's bank could not produce copies of checks that were more than seven years old. In addition to the payments to Sharon, William purchased clothing, bicycles, phones, pagers, and other items for the children. In spring 2000, the parties orally agreed that Sharon and her current husband could claim the youngest child as a dependent for tax purposes, but the parties did not modify the marriage settlement agreement to reflect the change. William exercised his right to visitation on Saturdays and one weeknight per week, and he enjoyed a polite relationship with Sharon until she learned of the annulment proceedings and expressed dissatisfaction with his support payments.

The trial court found that the parties did not agree to abate William's child support obligation, and even if such an agreement existed, it would not bind the court. The court held that William bore the burden of proving payment and that he failed to meet his burden because he lacked reliable records. The court also noted that Sharon

actually credited William with paying more support installments than he could prove with documentation. William timely appeals.

## ANALYSIS

### 1. Amount of Arrearage

■ The determination of the amount of a child support arrearage is a factual issue; therefore, we will disturb the decision of the trial court only if the decision is contrary to the manifest weight of the evidence. *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 389 (2002). This case is factually similar to *In re Marriage of Jorczak*, 315 Ill. App. 3d 954 (2000), where a father defended against a claim for a child support arrearage by arguing that he had partially paid his child support obligation. The Appellate Court, Fourth District, initially noted that the mother was not an injured party seeking recompense for injury, but instead a judgment debtor seeking satisfaction of the obligation created by the dissolution judgment. *Jorczak*, 315 Ill. App. 3d at 956-57. The court held that, once the mother established the existence of the obligation itself, the father bore the burden of establishing the extent of any payments he made. *Jorczak*, 315 Ill. App. 3d at 957.

In this case, Sharon's reference to the dissolution judgment and child support orders established the existence of William's support obligation. William, then, bore the burden of proving that he paid the obligation. Admitting that neither party presented compelling evidence on the issue of payment, the court found that William failed to meet his burden of proof. We conclude that the court's finding is not against the manifest weight of the evidence.

### 2. Equitable Estoppel

We next address William's argument that Sharon was equitably estopped from recovering the arrearage because she allegedly told him that she would waive her right to periodic support payments as long as he purchased several unspecified items for the girls. The trial court found that there was no agreement, and even if one existed, it was unenforceable because the court did not approve it.

■ A claim of equitable estoppel exists where a person, by his or her *statements or conduct*, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable. *Blisset v. Blisset*, 123 Ill. 2d 161, 169 (1988). We conclude that William could not have relied on the purported agreement to his detriment because, for the reasons discussed below, extrajudicial agree-

ments modifying support are unenforceable. See *Blisset*, 123 Ill. 2d at 169-70.

■ The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of discretion. The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. Moreover, property disposition agreements between spouses are binding upon the court, unless unconscionable, but in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children. *Blisset*, 123 Ill. 2d at 167. Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. *Blisset*, 123 Ill. 2d at 167-68. Former spouses might agree to modify child support obligations, benefitting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. Therefore, parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children. *Blisset*, 123 Ill. 2d at 168.

In *Blisset*, the father forfeited his visitation rights in exchange for the wife's promise that she would not enforce her right to child support. The supreme court rejected his argument that the visitation forfeiture amounted to detrimental reliance for equitable estoppel purposes, because "[t]o allow these reasons to suffice as a detriment, sufficient to establish estoppel, would allow [the mother] and [the father], and others in similar circumstances, to look past the best interests of their children and, by their own agreement, frustrate the intent of child support and visitation orders." *Blisset*, 123 Ill. 2d at 169-70.

■ In this case, the trial court discredited the testimony of William and his mother and concluded that Sharon never orally agreed to terminate the support obligation. It is the function of the trial court to resolve conflicting testimony by assessing the credibility of the witnesses and the weight to be accorded their testimony. The finding of the trial court will not be disturbed unless it is against the manifest weight of the evidence. *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1095 (1992). We conclude that the trial court's finding that no agreement existed is not against the manifest weight of the evidence.

Even if we were to accept William's assertion that Sharon orally waived her right to future support, we would agree with the trial

court that such an agreement would be unenforceable because it was not approved by the trial court. An extrajudicial agreement to modify support does not safeguard the children's interests by establishing in court, prior to the performance of the agreement, that the children would have adequate financial support and that ending periodic support payments would not be detrimental to the children. The purported agreement in this case is especially troubling in light of William's failure to specify what items he promised to provide for the children in exchange for the waiver of his support obligation. Even if an agreement existed, it would be unenforceable because William and Sharon failed to obtain judicial approval, and instead usurped the judicial function by modifying the court-ordered child support obligation themselves. See *Blisset*, 123 Ill. 2d at 168. Accordingly, we conclude that the court's rejection of the equitable estoppel defense is not against the manifest weight of the evidence, because William failed to prove that he reasonably relied on a statement by Sharon regarding support. See *Blisset*, 123 Ill. 2d at 169-70.

### 3. *Laches*

Finally, we address William's argument that the doctrine of *laches* precluded Sharon from waiting since the June 1983 dissolution to petition for overdue support in March 2001. William suggests that the trial court did not rule on this affirmative defense, but the record discloses that the court heard and rejected the argument when William raised it in his posttrial motion.

■ *Laches* is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party. *In re Marriage of Kramer*, 253 Ill. App. 3d 923, 932-33 (1993). The party citing *laches* as a defense to a claim must prove two elements: (1) lack of diligence by the party asserting the claim and (2) injury or prejudice to the opposing party resulting from the delay. *Kramer*, 253 Ill. App. 3d at 933.

■ When fixing the period in which rights and claims would be barred by *laches*, equity follows the law, and courts of equity adopt the period of limitations fixed by statute. Thus, when a claim or right is not barred by a limitations period, *laches* will not apply unless special circumstances make it inequitable to grant the relief requested. *Kramer*, 253 Ill. App. 3d at 933. Application of the doctrine of *laches* lies within the sound discretion of the trial court, and this court will not disturb its decision absent an abuse of discretion. *Kramer*, 253 Ill. App. 3d at 933.

■ Illinois courts have consistently held that an Illinois divorce decree ordering payment of child support is a money judgment subject to the 20-year limitation for enforcement of judgments contained in section 13—218 of the Code of Civil Procedure (Code) (735 ILCS 5/13—218 (West 2002)), rather than the 5-year limitation contained in section 13—205 of the Code (735 ILCS 5/13—205 (West 2002)). *Kramer*, 253 Ill. App. 3d at 927. Generally, a limitations period begins to run from the time the cause of action accrues. Here, the divorce decree provided for monthly child support payments. Where a money obligation is payable in installments, a separate cause of action accrues on, and the limitations period begins to run against, each installment as it becomes due. *Kramer*, 253 Ill. App. 3d at 928.

■ Pursuant to section 13—218 of the Code and *Jorczak*, William bore the burden of proving each payment of the support obligation for a 20-year period following the date each installment became due. Sharon's right to the arrearage is not barred by the limitations period of section 13—218, because she filed her petition within 20 years of the date that the first missed installment became due. Therefore, *laches* will not apply unless special circumstances make it inequitable to grant the relief she requests. See *Kramer*, 253 Ill. App. 3d at 933.

The supreme court has held that, in the context of a *laches* defense to a claim for a support arrearage, " 'a spouse is not injured because he is forced to pay the accumulated support in one lump sum as opposed to weekly payments as ordered.' " *Blisset*, 123 Ill. 2d at 170, quoting *Finley v. Finley*, 81 Ill. 2d 317, 330 (1980). The *Blisset* court held that *laches* did not bar the mother from recovering a support arrearage accruing seven years earlier, because the father did not prove injury from the delay. *Blisset*, 123 Ill. 2d at 171.

William contends that his injury is different from the one asserted in *Blisset*. William argues that Sharon's delay in filing her claim prevented him from producing financial records to meet his burden of proving payment. He suggests that, in light of the parties' frequent polite contact after the dissolution, he "has been severely prejudiced by the passage of time, and Sharon's failure to raise any issue regarding child support before the filing of her petitions in 2001." Acknowledging the rule stated in *Blisset*, the *Jorczak* court stated in *dicta* that "*laches* as an equitable defense would seem to have greater cogency where *** it could relate directly to a party's ability to carry its burden [of proving payment]." *Jorczak*, 315 Ill. App. 3d at 957. However, if William had trouble maintaining adequate records, as he asserted at trial, he could have made his payments through the clerk of the circuit court pursuant to the child support payment statute then in effect. See Ill. Rev. Stat. 1991, ch. 40, par. 709(b) (now 750 ILCS 5/709(b)

(West 2002)). In fact, *Jorczak*, on which William relies, recommended this procedure to eliminate nonpayment disagreements such as this one. *Jorczak*, 315 Ill. App. 3d at 957-58.

The trial court found that Sharon never told William that she waived her right to support. Moreover, William could have submitted payment through the clerk of the court if he did not wish to demand receipts for cash payments and retain records of his payments by check. We agree with the trial court that William failed to establish that special circumstances excused his failure to meet his burden of proving payment of child support. Accordingly, we hold that the trial court did not abuse its discretion when it found that William did not prove the existence of an injury caused by Sharon's delay in petitioning for the arrearage. Our analysis of the prejudice prong of William's *laches* defense obviates the need to address whether Sharon lacked diligence in filing her petition for the arrearage.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and KAPALA, JJ., concur.