NO. 4-05-0662          Filed: 10/23/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| LINDA BABCOCK, | ) | Appeal from |
| Petitioner-Appellee and Cross-Appellant, | ) | Circuit Court of |
| v. | ) | Macon County |
| RICARDO MARTINEZ, | ) | No. 03F466 |
| Respondent-Appellant and Cross-Appellee. | ) | |
| | ) | Honorable |
| | ) | Albert G. Webber, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

As part of a marital settlement agreement, respondent, Ricardo Martinez, agreed to allow petitioner, Linda Babcock, to have custody of their children and to pay a percentage of his net monthly income as child support. The settlement agreement was incorporated into the final judgment of dissolution entered in Cook County, Illinois, in 1987. Two months later, Ricardo moved to the state of Kansas. In 1988, Linda sought enforcement of the support order pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) (Ill Rev. Stat. 1987, ch. 40, par. 1201 et seq.). In April 1988, the Kansas court entered an order, ordering Ricardo to pay $200 per month as child support. In May 1988, the Kansas court increased the monthly support amount to $300. The support payments were automatically deducted from Ricardo's pay.

Sixteen years later, in January 2004, Linda filed a petition to increase child support and for payment on arrearages. The trial court held that the Kansas support order did not supersede or modify the original Illinois judgment, and as such, Ricardo had fallen into arrearages in the payment of support in the amount of $92,159.91. He appeals from that order. Because we find the doctrine of equitable estoppel prevented Linda from collecting the arrearage, we reverse the court's

order and remand for further proceedings.

## I. BACKGROUND

Linda and Ricardo were married in Macon County, Illinois, in 1984. They had one son, Ricardo, Jr. (date of birth January 19, 1985). On June 25, 1987, a judgment of dissolution of marriage was entered in Cook County. Linda was pregnant at the time of the dissolution and later, on October 18, 1987, gave birth to the parties' second son, Steven. In August 1987, Ricardo moved to Kansas.

On October 29, 2003, Linda filed a petition for registration of the Cook County judgment of dissolution. A copy of the judgment was attached to Linda's petition. The final judgment incorporated a written settlement agreement that awarded custody of the children to Linda subject to Ricardo's visitation rights of "reasonable frequency and for reasonable periods of time." According to the settlement agreement, Linda was represented by counsel and Ricardo was not. The agreement specified that Ricardo was to pay Linda maintenance in "a sum equal to 5% of his net income" for two years or until Linda secured full-time employment, whichever occurred first.

Ricardo was to also pay Linda child support in an amount equal to 30% of his net income, "to be increased by 5% for each additional child born to [Linda] as a result of the marriage." Ricardo was to pay all of the children's medical and dental expenses and maintain "such employer-sponsored group health insurance as may be available" and maintain life insurance with the children as beneficiaries. Ricardo was to "pay all educational expenses of the minor children" as well as "all attorney's fees and costs of this action."

On January 6, 2004, the Illinois Department of Public Aid, on Linda's behalf, filed a (1) petition to increase Ricardo's child-support obligation due to Ricardo, Jr.'s enrollment in college. Linda also requested that child support be designated as a fixed amount rather than as a percentage of Ricardo's

net income. Linda also filed a petition to establish payment on Ricardo's child-support arrearage.

On March 30, 2004, Ricardo filed a request to admit, asking Linda to admit or deny the genuineness of certain documents attached to the request. The attached documents included what appeared to be payment records of a history of Ricardo's child support as maintained by a child support enforcement agency in Leavenworth, Kansas. Also included in the attached documents was an order dated May 2, 1988, entered by a district judge in Leavenworth, ordering Ricardo to pay $300 per month in child support for both children. We discern from the record that the Kansas order was the result of a 1988 motion filed by Linda in Macon County case No. 88-F-137, requesting Kansas's assistance in enforcing the Cook County judgment.

On April 1, 2004, Ricardo filed a response to Linda's petitions, claiming (1) the Cook County judgment that ordered him to pay a percentage of his net income to Linda as child support was invalid, and (2) Macon County should not "reassume" jurisdiction of Linda's petition to modify because the Kansas court's order already modified the Cook County judgment and was being enforced pursuant to RURESA.

On April 12, 2004, Ricardo filed another request to admit listing the amount of child support he claimed was due and the amounts he had paid during specified time frames. Linda did not respond to either request to admit.

On April 26, 2004, Ricardo filed a motion for partial summary judgment, claiming that, based upon the undisputed facts, Ricardo was not in arrears as a matter of law and, in fact, had paid more than the amount of support due.

On June 4, 2004, on Ricardo's motion, the trial court consolidated Macon County case Nos. 88-F-137 and 87-F-1042 with the current case. The significance of those cases will be discussed below.

On June 18, 2004, the State filed a petition to collect maintenance arrearages, claiming

Ricardo had not paid maintenance pursuant to the Cook County judgment in the amount of 5% of his net income for the two years following the entry of the final judgment.

On July 14, 2004, Linda filed a motion for summary judgment arguing the Kansas support order did not modify the Cook County judgment and thus Ricardo had a child-support arrearage. On July 27, 2004, Linda filed a petition seeking reimbursement from Ricardo for Ricardo, Jr.'s educational expenses.

On August 30, 2004, the trial court conducted a hearing on the parties' cross-motions for summary judgment, reserving argument on Linda's motion for educational support until November 9, 2004. Ricardo argued that the provisions of the Cook County judgment (specifying his child-support obligation as a percentage and not a fixed amount) did not "correspond with the guidelines in any way." According to Ricardo's motion, in 1987, without registering the Cook County judgment, Linda brought an action in Macon County (No. 87-F-1042). As a result of that action, a Leavenworth County, Kansas, case was commenced (No. 88-R-101) as a reciprocal support action pursuant to RURESA. In April 1988, the Kansas court, after finding that it had jurisdiction over the parties and the subject matter, ordered Ricardo pay $200 per month in child support. That Kansas order involved Ricardo, Jr., only.

In 1988, Linda brought another action in Macon County (No. 88-F-137) again seeking child support, but this time for both children. In May 1988, the Kansas court ordered Ricardo to pay $300 per month as support for both children. The payments were deducted automatically from Ricardo's pay for almost 17 years. Thereafter, Linda filed the current 2003 action seeking registration and enforcement of the Cook County judgment. Ricardo argued that the "first legitimate order in this case was the Kansas order" because, according to Ricardo, Illinois prohibits the designation of child support as a percentage. He claimed the Cook County judgment was not enforceable for that reason, and judgment should be entered in his favor as he has fully complied with the Kansas order for the past 16 years.

- 4 -

In response to Ricardo's argument, Linda argued that the Cook County judgment should be enforced with Ricardo receiving credit for the payments made pursuant to the Kansas order. Linda asked the trial court to calculate the amount of child support Ricardo should have been paying since 1987 based upon 35% of his net income as set forth in the Cook County judgment.

On October 13, 2004, the trial court granted summary judgment in Linda's favor on the issues relating to past-due child support, relying on the fact that the Cook County judgment incorporated an agreement between the parties. The court also found that RURESA did not allow the Kansas orders to supercede and lower the amount of support owed under the Cook County order. The court held the 1987 Cook County order was enforceable and the parties were directed to calculate the amount of arrearage owed by Ricardo for support. The arrearage should represent the difference between the amount due pursuant to the Cook County order and the amounts Ricardo paid pursuant to the Kansas orders. The court found that Linda's pursuit of maintenance was time barred and entered summary judgment in Ricardo's favor on that issue.

On November 5, 2004, Ricardo filed a motion for reconsideration or for clarification of the October 13, 2004, order. On January 27, 2005, Ricardo filed a motion for judgment on the pleadings, claiming Linda's failure to respond to the April 12, 2004, request to admit, by operation of law, deemed the averments therein admitted.

On January 27, 2005, the trial court conducted a hearing on all pending matters. Linda testified that she resided in Decatur, Illinois, with her current husband (whom she married in July 1988) and Steven, who was 17 years old at the time. Linda testified that she had received child-support payments through the "State Disbursement Unit of Illinois" from Kansas, but had never received any payments toward the children's medical bills. According to Linda, Ricardo had never met his son Steven and had not seen his son Ricardo, Jr., since the child was 2 1/2 years old. Linda testified that she did not have an

address or phone number with which to communicate with Ricardo when he moved to Kansas.

On cross-examination, Linda said she had an address for Ricardo in Kansas in 1988 "[a]nd a couple other times, but other than that, [she had] always called directory assistance long distance, and his number ha[d] always been unlisted." In 1988, while she was pregnant with Steven, Linda drove to Kansas and found Ricardo. In 1993, she placed an advertisement in the newspaper in Kansas and he responded. She denied that she told him in 1993 that she did not want anything from him for the children. (Ricardo's testimony differs.) In 2003, Linda wrote Ricardo a letter indicating that she would not seek "back support for the 35 percent of net" if he helped her, but he declined. Linda said she "tried every month" to collect more money from Ricardo while he was paying pursuant to the Kansas order.

Ricardo testified as an adverse witness that he resided with his current wife, 18-year-old stepson, and 12-year-old daughter. He moved to Kansas in August 1987. He had worked at the Lansing Correctional Facility from September 1987 until August 2002. When Ricardo left his employment, he accepted a pension buyout in the approximate amount of $20,000. Ricardo said that except during a few "brief periods," he had worked two jobs during the past 20 years. He had been with his current employer, Ree's Contracting, since February 2003. According to his W-2, Ricardo earned approximately $51,000 in 2004. His wife was the deputy warden's secretary for Lancing Correctional Facility. Ricardo testified that he and his current wife's gross income was $80,587 in 2001; $123,790 in 2002; and $73,216 in 2003.

Upon questioning by his counsel, Ricardo testified that prior to the entry of the Kansas order, he had mailed child-support checks directly to Linda, though he did not testify to the amount of each check sent. When the Kansas order was entered, he assumed the $300 was the set amount in full that he had to pay. The amount was reduced to $150 when Ricardo, Jr., turned 18 years old. Ricardo said he never had health insurance on the children and never received any medical bills for them. He added the children to his health insurance for the first time in October 2004.

Ricardo testified that had he known the Cook County judgment would be enforced, he would have tried to modify it "a long time ago." He said he had lived at the same address in Kansas since February 1992. After Linda's August 1987 visit to Kansas, he did not see her again. Soon thereafter, Ricardo's mother informed him of the advertisement Linda had placed in the newspaper. His mother gave Ricardo the address and he wrote to the children. A few weeks later, Ricardo received photographs and a letter from each of the children and one from Linda. Linda asked Ricardo not to contact the children anymore as it "'causes too many problems.'" According to Ricardo, Linda told him she did not need anything from him, she was remarried, and her new husband was considering adopting the children. She would contact him about that at a later date.

At the close of the evidence, the trial court took the matter under advisement. On March 8, 2005, the trial court, by docket entry, ordered Ricardo to pay Linda $802.76 per month as current child support ($400) and payment toward his arrearage ($402.76) of $92,159.91. He was also ordered to reimburse Linda for the children's medical expenses in the amount of $200 per month toward the total due of $8,257.76. The court denied Linda's petition for educational support, finding Ricardo was financially unable, due to the amounts ordered to be paid on child support and arrearages, to contribute to Ricardo, Jr.'s educational expenses.

On March 29, 2005, Ricardo filed a motion for reconsideration and clarification on the child-support order. On June 27, 2005, the trial court conducted a hearing on Ricardo's motion. The court took the matter under advisement and on July 5, 2005, denied Ricardo's motion for reconsideration or clarification. This appeal followed.

## II. ANALYSIS

### A. Effect of Kansas Order

First, Ricardo claims the trial court erred in ruling that the Kansas order did not supercede

the Cook County judgment. He claims the court in Illinois, via its transmittal order, requested the court in Kansas to establish a new child-support order, not to simply enforce the judgment previously entered. Ricardo also argues it was evident that the Kansas order established a new and enforceable order because the provision in the Cook County judgment ordering child support as a percentage of Ricardo's income was invalid. This is a question of law, and therefore we will conduct a de novo review. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).

Our supreme court has addressed the issue of the legal effect of child-support provisions designated in terms of percentages rather then specific dollar amounts. See In re Marriage of Mitchell, 181 Ill. 2d 169, 692 N.E.2d 281 (1998). In Mitchell, the parties entered into a settlement agreement whereby the husband was obligated to pay child support to the wife in the monthly amount of $450 or 25% of the husband's net income, whichever was greater. Relying on the language of section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(a)(5) (West 2004)), both the trial court and the appellate court found the percentage provision in the agreement void and unenforceable. Mitchell, 181 Ill. 2d at 172-73, 692 N.E.2d at 283.

Section 505(a)(5) states that "the final order [for child support] in all cases shall state the support level in dollar amounts." 750 ILCS 5/505(a)(5) (West 2004). Construing the language of this statutory section, the supreme court held that child-support orders must be expressed in terms of dollar amounts and not as a percentage of net income. Mitchell, 181 Ill. 2d at 173, 692 N.E.2d at 283. Any judgment entered contrary to the statute (by ordering child support in the form of a percentage) was considered an erroneous judgment. However, such an order did not affect the court's jurisdiction to enter the order, and thus, the judgment was not void, but voidable. Mitchell, 181 Ill. 2d at 175, 692 N.E.2d at 284.

The court stated:

"It is enough to conclude here that the present order was voidable and not void under either our traditional mode of analysis or the view expressed in the Restatement [(Second) of Judgments §12 (1982)].  In this case, the parties had the opportunity to fully litigate this question when the support order was entered, and they had as well the opportunity to bargain for, and benefit from, the terms of the settlement agreement."  Mitchell, 181 Ill. 2d at 177, 692 N.E.2d at 285.

Ricardo claims that Linda realized the Cook County judgment "was an invalid percentage order" and asked the Kansas court to establish a valid child-support order.  Because Kansas ordered Ricardo to pay a specific dollar amount, Ricardo claims, the Kansas order was the only proper and enforceable order.  Thus, we must determine the legal effect under RURESA of a child-support order entered in one state when another state later alters the terms of that judgment.

In In re Marriage of Gifford, 122 Ill. 2d 34, 521 N.E.2d 929 (1988), our supreme court considered that issue.  There, the parties divorced in Illinois.  Pursuant to the terms of the dissolution judgment, the husband was ordered to pay 35% of his gross income or $154.43 per week for support.  Shortly after the dissolution, the husband moved to Michigan and stopped making child-support payments.  The wife filed a RURESA petition in Illinois seeking to compel payment of child support by the husband in Michigan.  The Michigan court found the husband owed a duty of support but it lowered the husband's obligation to $45 per week.  The wife later filed an action in Illinois to recoup the arrearages pursuant to the Illinois judgment.  The trial court held that the Michigan order did not supercede or modify the Illinois judgment and the father owed $20,865 in past-due support.  Gifford, 122 Ill. 2d at 36, 521 N.E.2d at 929.

Before the supreme court, the husband argued that the Michigan support order was a valid judgment to which Illinois must grant full faith and credit.  Gifford, 122 Ill. 2d at 38, 521 N.E.2d at 930.

The wife argued that the Michigan court did not have subject-matter jurisdiction over the matter to prospectively modify the original order of support. Gifford, 122 Ill. 2d at 38, 521 N.E.2d at 930.

Michigan had enacted an antisupersession clause in its version of RURESA, which provided that any Michigan order of support would not supersede any previous order of support issued by another court when the Michigan court acted only as a responding state. See Gifford, 122 Ill. 2d at 37-38, 521 N.E.2d at 930, quoting Mich. Comp. Laws Ann. §780.171 (West 1982). Relying on the plain language of this antisupersession clause, our supreme court found that the Michigan support order did not constitute a modification of the Illinois judgment and that the amounts paid under the Michigan order were to be credited toward the amount due under the Illinois judgment. Gifford, 122 Ill. 2d at 38, 521 N.E.2d at 931. An "antisupersession clause provides that a responding court may set an amount of support which differs from that in the original support order while not modifying or superseding the original order." Gifford, 122 Ill. 2d at 40, 521 N.E.2d at 431.

The Gifford court held that "the Michigan order of support did not effect a modification of the Illinois divorce decree." Gifford, 122 Ill. 2d at 39, 521 N.E.2d at 931. The court found support for its decision in looking to other jurisdictions and noted its

> "holding appear[ed] to be in accord with every jurisdiction which [had] considered the issue. See Howard v. Howard, e.g. (Miss. 1966), 191 So. 2d 528, 531 ('an order of support in effect prior to the initiation of proceedings under the Uniform Act is not superseded by a subsequent order of support issued by the court of a responding state'); Westberry v. Reynolds, (1982), 134 Ariz. 29, 32, 653 P.2d 379, 382; Oglesby v. Oglesby, (1973), 29 Utah 2d 419, 420, 510 P.2d 1106, 1107 ('It is true that under these acts a "responding" state (Washington) may set a different amount that the

"obligor" (defendant) must pay, and in that sense there is a "modification" of an <u>amount</u>, but we do not believe and do not hold that the <u>decree</u> of the "initiating" state (Utah) was modified, vacated, reformed or eliminated' (emphasis in original)); <u>Ray v. Ray</u>, (1981), 247 Ga. 467, 469, 277 S.E.2d 495, 496; <u>Thompson v. Thompson</u>, (S.D. 1985), 366 N.W.2d 845, 847; <u>Jaramillo v. Jaramillo</u>, (1980), 27 Wash. App. 391, 393-94, 618 P.2d 528, 529; <u>Despain v. Despain</u>, (1956), 78 Idaho 185, 190, 300 P.2d 500, 503 ('the authority of the court originally ordering payment is not affected or is its order modified by an order of the court of the responding state fixing another or different sum'); <u>Campbell v. Jenne</u>, (1977), 172 Mont. 219, 222-23, 563 P.2d 574, 576-77; <u>Peot v. Peot</u>, (1976), 92 Nev. 388, 390, 551 P.2d 242, 244; <u>In re Marriage of Popenhager</u>, (1979), 99 Cal. App. 3d 514, 522, 160 Cal. Rptr. 379, 383-84; <u>D.L.M. v. V.E.M.</u>, (Ind. App. 1982), 438 N.E.2d 1023, 1029 ('the initiating state is not required to grant full faith and credit to the support orders of a responding state when the initiating state considers a subsequent petition for modification or calculates arrearages due under the divorce decree'); <u>Lanum v. Lanum</u>, (1983), 92 A.D. 2d 912, 912, 460 N.Y.S.2d 344, 345; <u>Hamilton v. Hamilton</u>, (Ky. App. 1972), 476 S.W.2d 197, 200; <u>Nissen v. Miller</u>, (Tenn. App. 1982), 642 S.W.2d 428. See also Annotation, 31 A.L.R. 4th §6, at 347 (1984)." <u>Gifford</u>, 122 Ill. 2d at 39-40, 521 N.E.2d at 931.

Like Michigan, Kansas had an antisupersession clause in effect at the time the orders in this case were entered. Section 23-480 of the Kansas Enforcement of Support Act provided as follows:

"A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court.' Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." (Emphasis added.) Kan. Stat. Ann. §23-480 (1988).

See In re Marriage of Head, 187 Ill. App. 3d 159, 162, 543 N.E.2d 345, 347 (1989), quoting Kan. Stat. Ann. §23-480 (1988).

In 1989, the Second District interpreted Kansas's antisupersession clause in a case factually similar to the one before us. See Head, 187 Ill. App. 3d 159, 543 N.E.2d 345. There, the husband had agreed at the time of his divorce in Illinois to pay $541.67 per month as child support. Two years later, the wife filed a RURESA petition for payment on arrearages. The petition was sent to Kansas, where the husband resided. The Kansas court ordered the husband to pay $250 per month as support and $50 per month toward his arrearage. Five years later, the wife filed another petition in Illinois for payment on arrearages based upon the Illinois judgment. The husband argued the arrearages, if any, should not be calculated based upon the 1981 judgment. According to the husband, the Illinois courts were obligated to give full faith and credit to the Kansas order. Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347.

Referring to Kansas's antisupersession clause set forth above, the Second District found that the record did not support the husband's assertion that the Kansas order had modified the Illinois judgment.

Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347. The court held "[i]n the absence of a clear statement of an intent to nullify a prior support order, we consider the Kansas district court's order as merely providing [the wife] with an additional and separate means for enforcing [the husband]'s support obligations." Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347. The court rejected the husband's claim that under Sullivan v. Sullivan, 98 Ill. App. 3d 928, 424 N.E.2d 957 (1981) (a case also relied upon by Ricardo), the Illinois courts were required to give full faith and credit to a responding state's modification order. Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347. Under RURESA, the responding state's order (without language to the contrary) is considered an additional means of enforcing support obligations. Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347; see also In re Marriage of Wettstein, 160 Ill. App. 3d 554, 557, 514 N.E.2d 783, 785 (1987) (Fourth District) (Illinois court was not required to give full faith and credit to Ohio support order based upon the provisions of Ohio's antisupersession clause prohibiting the nullification of a previous Illinois order). Thus, the wife was entitled to the recovery of any arrearages due under the 1981 Illinois judgment. Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347.

As in Head, the record here does not support the assertion that the Kansas court intended to modify or nullify the Cook County dissolution judgment. The Kansas orders did not so much as mention the Illinois order, nor did they set forth the reasons for the reduction in the support amount. See Head, 187 Ill. App. 3d at 163, 543 N.E.2d at 347. Following Gifford, Head, and Wettstein, we conclude that the trial court was correct in determining that the Kansas orders did not supersede the Illinois judgment. Because the record does not indicate that the Kansas orders specifically nullified the previous support order, we hold Linda is entitled to recover any arrearages due based upon the 1987 Cook County support order.

B. Request To Admit

Ricardo next contends that Linda's failure to respond to his April 12, 2004, request to admit

- 13 -

effectively admitted as facts those statements contained in the request that detailed the amount of child support Ricardo owed and had paid for specified period of times. Linda acknowledged that she had failed to respond to Ricardo's request but claims her silence does not adversely affect her position on appeal. Linda does not dispute the amounts Ricardo paid in child support since 1987, but does dispute the amounts Ricardo owed. She claims the amounts owed is a question of law and thus an inappropriate question for a request to admit. We agree.

Supreme Court Rule 216(c) (134 Ill. 2d R. 216(c)) specifically provides that a party's failure to deny the matters of fact set forth in a request to admit by not responding constitutes an admission of those facts. "Although a party may constructively admit facts, even 'ultimate' facts, by failing to respond to a request for admission, a party does not constructively admit 'legal conclusions' by a failure to respond to requests that contain those conclusions." Montalbano Builders, Inc. v. Rauschenberger, 341 Ill. App. 3d 1075, 1080, 794 N.E.2d 401, 406 (2003); see also Department of Public Aid ex rel. Peavy v. Peavy, 307 Ill. App. 3d 16, 24, 716 N.E.2d 1261, 1267 (1999) (failure to respond to issue of law did not result in an admission).

Ricardo's request to admit included statements such as: "The [d]efendant owed $900 in child support from March 1, 1987, until May 31, 1987" and "Between March 1, 1987, and May 31, 1987, the [d]efendant made $300 in payments for child support." While the question of the amounts Ricardo paid were factual in nature, the question of the amounts owed were legal in nature. Thus, those statements pertaining to legal questions were inappropriate subjects for a request to admit. See P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill. 2d 224, 240-42, 703 N.E.2d 71, 79-80 (1998) (whether a party paid another party a certain amount of money is a fact that may be included in a request for admission and may be constructively admitted, but assertions that seek legal conclusions are not appropriately included in a request to admit).

The amount of child support Ricardo <u>paid</u> throughout the history of the proceedings was an undisputed issue of fact. The amount of child support Ricardo <u>owed</u> since the entry of the Cook County final judgment was the pivotal issue of the case because of the entry of the Kansas support orders. To determine the amount Ricardo owed in child support, the trial court was required to make a legal determination as to which support order prevailed. The amount of support due constituted a legal question and could not be admitted by the failure to answer the request to admit. See <u>Montalbano Builders</u>, 341 Ill. App. 3d at 1080, 794 N.E.2d at 406.

C. Equitable Estoppel and <u>Laches</u>

Ricardo next claims the trial court erred by not applying the doctrines of equitable estoppel and <u>laches</u> to Linda's claim that Ricardo owed past-due child support based upon the Cook County judgment for the past 16 years when she had not attempted to enforce the judgment during that time. A finding that the doctrine of equitable estoppel applies must be based on clear and convincing evidence and will not be reversed unless the trial court abused its discretion. <u>In re Marriage of Duerr</u>, 250 Ill. App. 3d 232, 237, 621 N.E.2d 120, 124 (1993).

Equitable estoppel applies when a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. <u>In re Marriage of Smith</u>, 347 Ill. App. 3d 395, 399, 806 N.E.2d 727, 730 (2004). The party asserting estoppel must have relied upon the other person's acts or representations and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable. <u>Smith</u>, 347 Ill. App. 3d at 399, 806 N.E.2d at 730- 31.

Linda cites several cases supporting her claim that application of equitable estoppel or <u>laches</u> would not save Ricardo's argument. See <u>Blisset v. Blisset</u>, 123 Ill. 2d 161, 526 N.E.2d 125 (1988); <u>Smith</u>, 347 Ill. App. 3d 395, 806 N.E.2d 727; <u>In re Marriage of Steinberg</u>, 302 Ill. App. 3d 845, 706 N.E.2d

895 (1998); Jones v. Meade, 126 Ill. App. 3d 897, 467 N.E.2d 657 (1984). In each of these cases, the reviewing court held that the doctrine of equitable estoppel did not absolve the husband from his responsibility of paying child support and any arrearages accrued. However, the key distinguishing factor between those cases and the case sub judice was that the above decisions each involved an extrajudicial agreement, or an alleged extrajudicial agreement, to reduce or abate the husband's child-support obligation. Here, Ricardo was ordered by a court of law to pay less than originally ordered in the dissolution judgment.

Our supreme court has explained, courts have the exclusive authority to modify child support and are not bound by the parties' agreements as to child support. Blisset, 123 Ill. 2d at 167, 526 N.E.2d at 127-28. Parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the court's satisfaction, the parties' agreement is in accordance with the children's best interests. Blisset, 123 Ill. 2d at 168, 526 N.E.2d at 128.

From Ricardo's perspective, the parties did just that. The Kansas courts became involved in Linda's pursuit of past-due support and, with apparent authority, ordered Ricardo to pay $300 per month. Despite Linda's argument on appeal, we find Ricardo had no obligation to secure counsel to ensure that the Kansas order was enforceable.

In general, the doctrine of equitable estoppel applies in situations such as this--where a spouse seeks past-due child support. In re Marriage of Jungkans, 364 Ill. App. 3d 582, 847 N.E.2d 141 (2006). In particular, the facts of this case strongly suggest the application of the doctrine. For nearly 17 years, Ricardo regularly paid $300 per month in child support via automatic deduction from his paychecks and annual income tax refunds. For 17 years, Linda accepted the $300 per month from Ricardo without protest. The $300 amount was not determined by a private agreement but was ordered by a court of law. Whether the Kansas court had the authority to prospectively reduce Ricardo's child-support amount is irrelevant for the purposes of this particular argument. By sitting idly by for 17 years (until both children

had, or almost had, reached majority), Linda induced Ricardo to rely, to his detriment, on the assumption that he was satisfying his child-support obligation. Further, Ricardo's reliance on Linda's inaction was reasonable in light of the fact that the support amount was determined by a court order. Ricardo had no reason to believe he was somehow evading his responsibility by complying with the Kansas support order.

Earlier in this decision, we found that the Kansas order did not supersede the Cook County judgment. In so finding, we relied on the decisions of Gifford, Head, and Wettstein, which had all found that the wife was entitled to collect the arrearage that resulted from the difference between the responding state's order and the initiating state's order. Not one of those cases addressed the doctrine of equitable estoppel or laches.

In Gifford, the wife filed the action to determine the arrearage amount approximately three years after the responding court entered its order reducing the amount of child support the husband owed. See Gifford, 122 Ill. 2d at 36, 521 N.E.2d at 929-30. In Head, the wife waited five years. See Head, 187 Ill. App. 3d at 160-61, 543 N.E.2d at 346. In Wettstein, the time span between the responding court's order and the wife's petition to determine arrears was more similar to the case sub judice. See Wettstein, 160 Ill. App. 3d at 556, 514 N.E.2d at 784. The wife had waited 11 years before filing and the husband raised the issue of equitable estoppel. Wettstein, 160 Ill. App. 3d at 556, 514 N.E.2d at 784. However, in response, this court found that because "the Ohio judgment was not entitled to full faith and credit, we need not address [the husband]'s contention that [the wife] [was] equitably estopped from denying the Ohio order modified the child support provisions of the Illinois judgment." Wettstein, 160 Ill. App. 3d at 560-61, 514 N.E.2d at 787.

Here, Linda sought enforcement of the original Cook County judgment after accepting $300 per month for 17 years. We find she was equitably estopped from seeking past-due child support from Ricardo, and as a result, we reverse the trial court's judgment finding Ricardo in arrears.

Based upon our decision to reverse the trial court's judgment that Ricardo owed past-due child support, we decline to address Ricardo's next claim of error that Linda failed to sufficiently prove his net income for the past 17 years.

### D. Proof of Medical Expenses

Ricardo next claims the trial court improperly considered hearsay evidence when it admitted copies of the children's medical bills purportedly paid by Linda. As a result of this evidence, the court ordered Ricardo to reimburse Linda $8,257.76 for the children's medical expenses. He claims Linda failed to (1) lay a proper foundation for the admission of the evidence, and (2) adequately prove the amount of medical expenses that she had actually paid. At trial, Linda presented a group exhibit consisting of billing records from various medical providers who treated the children over the last 17 years. She testified that the records reflected the medical expenses she had paid out of her pocket.

A trial court's determination on the admissibility of evidence will not be reversed absent an abuse of discretion. People v. Buss, 187 Ill. 2d 144, 219, 718 N.E.2d 1, 42 (1999). Ricardo claims the trial court erred in admitting this evidence when Linda presented no testimony from "any employee of any of the doctor's offices to lay a proper foundation for admission of the documents into evidence as required by Supreme Court Rule 236(a) [(145 Ill. 2d R. 236(a))]." Without a proper foundation, Ricardo claims, the medical records were inadmissible hearsay. We disagree. "The rule regarding admission of business records [citation] was adopted to eliminate restrictive rules that resulted in a 'mass of technicalities which serve[d] no useful purpose in getting at the truth' (5 Wigmore, Evidence 346, 361 (3d ed. 1940)). It was felt that business of this great commercial country is transacted on records kept in the usual course of business and such evidence ought to be competent in a court of justice." Kaufman & Broad Homes, Inc. v. Allied Homes, Inc., 86 Ill. App. 3d 498, 503, 408 N.E.2d 91, 95 (1980).

Linda's group exhibit consisted of the following: First, a summary sheet listing each of the

medical providers and the amounts paid to each. Following the summary sheet, Linda attached a log sheet she had evidently prepared for each provider. The log sheet listed the date of service, the amount charged, the amount paid by insurance, the remaining balance due, and the amount she paid for each provider. Copies of the actual medical bills were then attached to each log sheet in support.

Linda testified that she had kept records of all the children's medical bills over the last 17 years. She said those records included payments that had been made by insurance and payments made by her. She testified that her group exhibit represented those records. The medical bills that Ricardo challenges were included in the group exhibit as support of the accuracy of Linda's record-keeping skills.

Ricardo did not challenge the reasonableness of the fees, he challenged only whether Linda had, in fact, paid the bills. "When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is prima facie reasonable." Land & Lakes Co. v. Industrial Comm'n, 359 Ill. App. 3d 582, 590-91, 834 N.E.2d 583, 591 (2005). Because the reasonableness of the fees charged is not at issue, the foundation requirement for whether the bills submitted had been paid was sufficiently addressed by Linda's testimony. It was not necessary that an employee from each of the medical providers testify. "[L]ack of personal knowledge by [the record's] entrant or maker goes to the weight but not to the admissibility of the record." Preski v. Warchol Construction Co., 111 Ill. App. 3d 641, 652, 444 N.E.2d 1105, 1112 (1982). The trial court assigned, based on Linda's testimony alone, the proper weight of the evidence regarding the accuracy of the amounts she had paid. We find the records were properly admitted.

E. Cross-Appeal

In a cross-appeal, Linda claims the trial court improperly lowered the amount of child support for Steven when no petition for modification was pending. In its March 8, 2005, order, the court ordered Ricardo to pay $802.76 per month as combined current support for Steven of $400 and payment

on the arrearages of $402.76. Pursuant to the Cook County judgment, Ricardo was obligated to pay $860.10 per month (30% of his net monthly income of $2,867) . Because we have ruled that the doctrine of equitable estoppel prevents Linda from recovering any arrearages from Ricardo based upon the Cook County judgment, we vacate the court's October 13, 2004, order (that granting summary judgment in Linda's favor and rejecting Ricardo's defenses) and remand for entry of an order recalculating Ricardo's child-support obligation consistent with our decision--that is, pursuant to the Cook County judgment, finding no arrearage, and ordering reimbursement for the children's medical expenses.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

STEIGMANN and McCULLOUGH, JJ., concur.