No. 2--08--0109      Filed: 2-27-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF KATHLEEN M. DAVENPORT, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 72--D--178 |
| RONALD L. DAVENPORT, | ) ) ) | Honorable William P. Brady, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

This case involves a claim for a child support arrearage for a "child" who is now 44 years old. Respondent Ronald Davenport appeals from the trial court's ruling awarding his former wife, petitioner Kathleen Davenport, approximately $26,600 in past-due child support and interest. On appeal, respondent argues that the circuit court improperly denied his motion to vacate a preliminary injunction entered prior to its decision on the child support arrearage, that the statute of limitations barred petitioner's collection of the past-due support, that petitioner's action was barred by laches, and that the trial court erred in allowing petitioner to recover interest on the past-due support. For the reasons that follow, we affirm the judgment of the trial court.

In the parties' 1972 divorce judgment, respondent was ordered to pay $13 per week per child as child support for the parties' three minor children (then 8, 3, and 1 year old). In 1979, respondent was found in contempt for his failure to meet his child support obligation; the parties agree that he

overpaid in satisfying the judgment, so that, as of March 1981, his support account had a positive balance of $1261. There is some dispute as to what, if any, payments he made after that date.

On August 30, 2007, petitioner filed an emergency petition for injunctive relief. In the petition, she alleged that respondent had accrued an arrearage in his child support obligation since the 1979 contempt order, and she asked that the court intervene to prevent respondent from dissipating his expected proceeds from his brother's sale of family property. On September 4, the trial court held a hearing for argument on the emergency petition. Respondent, who was present at the hearing, told the trial court that he had received the petition on August 31 and had not yet "had a chance to get an attorney." The trial court entered an order that day requiring that respondent refrain from spending or otherwise disposing of any receipts from his brother "until further order of court." Two weeks later, respondent (via his attorney) filed a motion to vacate the trial court's September 4 order, and, one week after that, petitioner filed a rule to show cause seeking to recover past-due child support from respondent. At a subsequent hearing for argument on respondent's motion to vacate the preliminary injunction, the trial court noted the allegation of past-due child support and ruled that it would delay ruling on the motion to vacate until it had an opportunity to assess whether respondent would actually be liable for past-due support. Petitioner's rule to show cause thereafter proceeded to an evidentiary hearing.

At the evidentiary hearing, petitioner testified that respondent had paid her no child support since March 1981, the last time respondent had had what she characterized as "steady employment." On cross-examination, she stated that she did not seek to recover the child support payments respondent owed her after that point, because "he was indigent." During his testimony, respondent agreed that he had not had steady employment since 1981, but he said that he nonetheless paid

petitioner some child support from unemployment benefits he received for one year after March 1981. Respondent testified that he paid the money in cash directly to petitioner (as opposed to through the court clerk's office, as he had prior to March 1981) and thus that there was no record of his having made the payments.

At the conclusion of the hearing, respondent's counsel argued that interest should not be charged against his client, because "the interest statute wasn't even enacted until January 1, 2000." The trial court responded that "[t]here was always an interest on money judgments." The trial court took the matter under advisement and again continued its ruling on respondent's motion to vacate the preliminary injunction pending its ruling on the child support arrearage.

At the next court date, respondent's attorney informed the court that the parties were there for its ruling on respondent's motion to vacate, and the trial court responded by asking, "Didn't I already tell you no?" Respondent's attorney answered that the trial court had told the parties that its ruling would depend on its ruling on the merits of the case, and petitioner's attorney responded that it was her understanding that the court had denied the motion. The trial court then moved on to announce its ruling on the issue of the child support arrearage. The trial court determined that there was an arrearage, calculated the principal of the arrearage, and added 9% interest to reach the amount of the judgment against respondent. After the ruling, respondent's attorney asked the trial court, "just so the record is clear, are you applying the interest as provided in 750 ILCS 5/505?" The trial court responded, "I'm applying interest on the judgment which is at nine percent. 505 says what?" After respondent's attorney relayed the language of the statute, which described a method for assessing interest, the trial court responded, "Well, I think that certainly is--did I do it like that way? No." The

trial court went on to say that it thought its method of calculating interest was reasonable. After the trial court entered its judgment, respondent timely appealed.

Respondent's first argument on appeal is that the trial court erred in denying his motion to vacate the preliminary injunction against him. Respondent frames his argument as a question of whether the trial court erred in initially granting the preliminary injunction against him, and we consider his argument accordingly. "To justify entry of a preliminary injunction, the moving party carries the burden of persuasion on four issues: (1) he or she possesses a clearly ascertainable right which needs protection; (2) he or she will suffer irreparable injury without the injunction; (3) there is no adequate remedy at law for his or her injury; and (4) a likelihood of success on the merits exists." In re Marriage of Petersen, 319 Ill. App. 3d 325, 336 (2001). The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and the decision will not be disturbed on review absent an abuse of discretion. People ex rel. Klaeren v. Lisle, 202 Ill. 2d 164, 177 (2002). According to respondent, none of the above criteria were met here. We disagree.

On the first criterion, petitioner's clearly ascertainable right in need of protection, respondent argues that petitioner failed to present evidence that a child support arrearage actually existed; respondent argues that, in seeking the preliminary injunction, petitioner incorrectly stated that respondent stopped paying child support in March 1979, instead of March 1981. Even if such a later-proven factual discrepancy could undermine a preliminary injunction ruling made before resolution of such factual questions, we note that the factual discrepancy makes no difference here, because petitioner could establish a right to past-due support regardless of the date on which the arrearage began to accrue.

On the second criterion, irreparable harm to petitioner absent an injunction, respondent argues that a child support obligee has "extensive legal remedies" for unpaid support and thus that an injunction was unnecessary. However, the purpose of the preliminary injunction was to prevent respondent from dissipating assets that could eventually provide for her legal remedy. For the same reason, we reject respondent's contention that the third criterion--the adequacy of legal remedies--was not established because petitioner could recover the past-due support through legal remedies. The presence of the fourth criterion, the likelihood of petitioner's success on the merits, is evident from the trial court's eventual judgment in her favor on the child support issue.

Aside from arguing that there was an insufficient basis for entry of a preliminary injunction, respondent also challenges the injunction on the ground that it violated his rights to procedural due process because it was entered without adequate notice to him. However, respondent admitted on the record that he received notice of the September 4 injunction hearing on August 31, and he actually attended the hearing. We see no problem with the notice provided respondent here.

Respondent's second argument on appeal is that the trial court erred because the relevant statute of limitations bars petitioner's claim. The question of what statute of limitations applies to a given case presents a question of law to be reviewed de novo. Travelers Casualty & Surety Co. v. Bowman, 229 Ill. 2d 461, 468 (2008). The parties agree that, until July 1, 1997, the statute of limitations governing enforcement of child support orders required that an action be brought within 20 years of the child support judgment. See 735 ILCS 5/13--218 (West 1996). However, on July 1, 1997, the legislature enacted Public Act 90--18, which amended the statute of limitations so that "[c]hild support judgments *** may be enforced at any time." 735 ILCS 5/12--108(a) (West 2006). Relying on the 1997 amendment, the trial court concluded that the statute of limitations did not bar

petitioner's claim. Respondent asserts that the trial court gave improper retroactive effect to the 1997 amendment. We disagree.

In general, in the absence of language in the amendment indicating otherwise, statutory amendments that modify procedural laws--those laws that prescribe the method of enforcing rights or the machinery for carrying on a suit--may be applied retroactively, while amendments to substantive laws may not, except that even procedural amendments cannot be applied retroactively when doing so would impair a right that is sufficiently well established to be protected under the due process clause of the constitution. In re Marriage of Duggan, 376 Ill. App. 3d 725, 728-29 (2007). Under these rules, "[w]here an amendatory act lengthens a limitations period"--a procedural law--"the amendment shall govern all actions not previously barred." Peterson v. Hinsdale Women's Clinic, 278 Ill. App. 3d 1007, 1012 (1996). (If the action was previously barred, then the expiration of the limitations period would have become an affirmative defense, and a vested right, which could not be undone retroactively. See Duggan, 376 Ill. App. 3d at 733-34.) Here, respondent's child support arrearage began in March 1981, and, therefore, the previously applicable 20-year statute of limitations had not run by the time it was extended by the 1997 amendment. Accordingly, the trial court correctly applied the amended statute of limitations to this case.

Respondent's third argument is that the trial court erred in refusing to apply the doctrine of laches to bar petitioner's claim. Laches is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. In re Marriage of Smith, 347 Ill. App. 3d 395, 401 (2004). The party asserting laches as a defense to a claim must prove two elements: (1) lack of diligence by the party asserting the claim; and (2) injury or prejudice as a result of the delay to the party asserting laches. Smith, 347 Ill. App. 3d at

401. The decision as to whether to apply laches to a given case rests within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Smith, 347 Ill. App. 3d at 401.

Even assuming that the 26-year gap between the date respondent began to fall behind on his child support payments and the date petitioner brought suit evinces a lack of diligence on petitioner's part, we see no prejudice to respondent as a result of the delay. Respondent argues that he was prejudiced by the passage of time because it caused him to be unable to recall the amounts and dates of cash payments he made to respondent after March 1981. However, as petitioner notes, this is the precise argument this court rejected in Smith. See Smith, 347 Ill. App. 3d at 402-03 (attributing the deficiencies in the husband's records of his alleged support payments to the husband's choice not to use a more traceable method of payment, not to the wife's delay in bringing suit). Here, as in Smith, respondent alleged that he paid additional sums with cash and without making any record of the payments, and it was this choice, not the delay in bringing suit, that forestalled his producing evidence of his alleged payments. Even if respondent's recollection of his alleged payments had been perfect, he still would have been without any other evidence to support his claim that he made the payments, a claim that petitioner directly refuted in her testimony. Thus, we see no prejudice to respondent as a result of the delay in brining suit, and we agree with the trial court that the doctrine of laches should not bar petitioner's claim in this case.

The real crux of respondent's laches argument is that he sees infirmity in petitioner's declining to pursue support from him during a period in which they both seem to agree he was without means to provide it, before changing course and deciding to pursue support upon learning that respondent was expecting a windfall from a property sale. Petitioner appears to us to have chosen a prudent

course: she forwent pursuing support during respondent's period of unemployment, when doing so would have been expensive and futile, but, once she learned that respondent might be able to meet his obligation, she pursued the support that even respondent does not contest she was rightfully owed. This is not the type of inequitable result the doctrine of laches is designed to prevent.

Respondent's final argument is that the trial court's assessment of interest should be vacated because the portion of section 505 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505 (West 2000)) mandating that 9% interest be assessed on past-due child support was not enacted until after respondent's arrearage began to accumulate. See Pub. Act 91--397, eff. January 1, 2000.[1] However, as petitioner notes, before the enactment of the statutory amendment respondent references, "the allowance of interest on past-due periodic support payments *** [lay] within the sound discretion of the trial judge." Finley v. Finley, 81 Ill. 2d 317, 332 (1980). Accordingly, even if the statutory amendment respondent cites was not in effect at the relevant times in this case, the trial court could still independently have awarded interest as an application of its discretion. The record demonstrates that the trial court followed just this path: when respondent raised this same argument to the trial court, the trial court responded that "[t]here was always an interest on money judgments." After the trial court announced its final ruling, including the interest award, respondent

_____

[1]We note that the amendment respondent references has itself been amended. Compare 750 ILCS 5/505 (West 2000) ("A support obligation *** which becomes due and remains unpaid for 30 days or more shall accrue interest at the rate of 9% per annum") with 750 ILCS 5/505(b) (West 2006) ("A support obligation *** which becomes due and remains unpaid as of the end of each month *** shall accrue simple interest as set forth in Section 12--109 of the Code of Civil Procedure [(735 ILCS 5/12--109 (West 2006))]").

mentioned the revised statute, and the trial court responded by asking what the amended statute said and by noting that the court did not follow the statute's provisions exactly. Because these comments demonstrate that the trial court did not base its interest award on the statute, we reject respondent's argument that the trial court improperly relied on the statute in deciding to award interest.

For the foregoing reasons, justice delayed is not always justice denied. We affirm the judgment of the circuit court of De Kalb County.

Affirmed.

BOWMAN and SCHOSTOK, JJ., concur.