*In re* MARRIAGE OF MICHELE DUFFY, Petitioner-Appellant, and PHILLIP J. PILNY, Respondent-Appellee.

Second District   No. 2—98—1290

Opinion filed September 16, 1999.—Rehearing denied October 21, 1999.

K.O. Johnson and Lawrence J. Lucido, both of Law Office of K.O. Johnson, of De Kalb, for appellant.

No brief filed for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Michele Duffy, f/k/a Michele Pilny, and respondent, Phillip J. Pilny, were married on September 4, 1994. During their marriage, one child was born. The parties separated on June 10, 1997, and petitioned for dissolution of the marriage on August 17, 1998. The trial court entered an order dissolving the marriage which incorporated a joint parenting agreement. However, the trial court modified the dispute resolution provision of the joint parenting agreement and ordered that the parties mediate any child custody problems that arise. Petitioner appeals, arguing that the trial court lacked the authority to modify the joint parenting agreement. We affirm.

The parties' joint parenting agreement provided, in pertinent part:

"[The parties] agree that in the event that they cannot agree on the major decisions affecting the education, health, or religion of [their child] or any other issue related to this Joint Parenting Agreement, [the parties] may enter into mediation in an attempt to resolve said dispute prior to proceeding to hearing in a court of competent jurisdiction. Use of mediation shall be encouraged, but not required of either party. *** Either party may opt out of mediation if said party does not feel said mediation shall be effective."

In granting the judgment of dissolution of the marriage, the trial court made the following statement regarding the joint parenting agreement:

"Folks, if you can make the language of this agreement a reality that will be a wonderful thing for your child. I think with one exception *** the joint parenting agreement you've negotiated is clearly in your child's best interests, and therefore, you are hereby awarded joint legal custody of [the child], with [petitioner] having the situs of the child's primary residence.

The one provision I don't agree with and will not approve is the provision that says that you're not required to engage in mediation. I feel that litigation, hiring lawyers, going to court, examination, cross-examination, opening statements, closing arguments, spending the child's future college funds on legal fees and court costs, is contrary to the child's best interests, so I will be entering an order saying notwithstanding the agreement you are required to, except in emergency, to go to mediation."

The trial court further clarified its order and indicated that financial matters related to child custody, such as child support and medical expenses, were not subject to its order. The trial court entered its order and judgment for dissolution on September 11, 1998, and this timely appeal followed.

We first note that respondent, as appellee, has failed to file a brief in this matter. However, we may decide the issue presented in accordance with the guidelines of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ Petitioner argues that the trial court abused its discretion because it lacked the authority to modify the parties' agreement regarding custody. In custody cases, a presumption arises favoring the trial court's order. *In re Marriage of Hahin*, 266 Ill. App. 3d 168, 173 (1994). The trial court is in the best position to evaluate the credibility of the witnesses, the evidence, and the best interests of the child. *In re Marriage of Melton*, 288 Ill. App. 3d 1084, 1088 (1997); *Hahin*, 266 Ill. App. 3d at 173. In custody proceedings, the trial court must determine the best interests of the child and its decision will not be disturbed on appeal absent an abuse of discretion. *Hahin*, 266 Ill. App. 3d at 173-74; *Thomas v. Thomas*, 56 Ill. App. 3d 806, 807 (1978).

■ Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) encourages parties to enter into dissolution agreements. 750 ILCS 5/502(a) (West 1998); see also *In re Marriage of Ingram*, 259 Ill. App. 3d 685, 689 (1994). Section 502(b) of the Act provides as follows:

"The terms of the agreement, *except those providing for support, custody and visitation of children,* are binding upon the court un-

less it finds *** that the agreement is unconscionable." (Emphasis added.) 750 ILCS 5/502(b) (West 1998).

Although the Act encourages agreement, the State maintains an interest in protecting the marriage relation and the welfare of society, and is often referred to as a "third party" to a dissolution action. *In re Marriage of Ealy*, 269 Ill. App. 3d 971, 975 (1995), citing *Collins v. Collins*, 14 Ill. 2d 178, 184 (1958). Consequently, the parties to a dissolution proceeding may not enter into an agreement that affects the interest of their children without obtaining the approval of the court. *Ingram*, 259 Ill. App. 3d at 689, citing *Blisset v. Blisset*, 123 Ill. 2d 161, 167-68 (1988). Parents may not bargain away the interest of their children and the court is not bound by an agreement that does not protect the best interest of the children. *Blisset*, 123 Ill. 2d at 170; *Ealy*, 269 Ill. App. 3d at 975.

Petitioner apparently concedes that under section 502(b) of the Act the trial court is not bound by agreements governing child custody or support. See 750 ILCS 5/502(b) (West 1998). However, petitioner argues that the mediation provision of the joint parenting agreement is not a custody provision and therefore the trial court is bound by the parties' agreement regarding mediation. We disagree. By its own terms the mediation provision addresses disagreements between the parties on "major decisions affecting the education, health, or religion" of their minor child. The right to make decisions regarding a child's upbringing, including decisions regarding a child's education, health care, and religious training, is clearly within the authority granted a custodial parent under the Act. See 750 ILCS 5/608(a) (West 1998). Petitioner's suggestion that the resolution of disagreements regarding these issues is unrelated to custody is patently without merit and warrants no further discussion.

■ Petitioner further argues that the trial court exceeded its authority because section 602.1 of the Act, which governs joint custody agreements, allows, but does not mandate, the mediation of disputes between the parties. See 750 ILCS 5/602.1 (West 1998). Section 602.1(b) provides that a joint parenting agreement "shall *** specify a procedure by which proposed changes, disputes and alleged breaches may be mediated or otherwise resolved." 750 ILCS 5/602.1(b) (West 1998). Section 602.1(b) further provides that, "[i]n the event the parents fail to produce a Joint Parenting Agreement, the court may enter an appropriate Joint Parenting Order." 750 ILCS 5/602.1(b) (West 1998). Section 602.1(c)(1) identifies the factors a trial court should consider before entering a joint parenting order, including "the ability of the parents to cooperate." 750 ILCS 5/602.1(c)(1) (West 1998).

Petitioner argues that this is a case of first impression, and our own research has revealed no Illinois cases addressing a trial court's authority to require mandatory mediation as part of a joint parenting agreement. We note that in *In re Marriage of Aleshire*, 273 Ill. App. 3d 81 (1995), the appellate court held that trial courts do not have the authority to order the mediation of prospective visitation disputes absent a preliminary finding that the issues in question are proper for mediation. *Aleshire*, 273 Ill. App. 3d at 84-85. However, *Aleshire* did not involve joint custody, and the decision was based, in part, on the visitation enforcement provisions of section 607.1, which allow a trial court to order mediation only "[a]fter hearing all of the evidence." See 750 ILCS 5/607.1(c) (West 1998); *Aleshire*, 273 Ill. App. 3d at 84.

■ Petitioner argues that the trial court's order was contrary to the plain language of section 602.1. We disagree. A trial court is specifically authorized to consider joint custody on its own motion. 750 ILCS 5/602.1(b) (West 1998). Further, a trial court may enter a joint parenting order if the parties fail to produce a joint parenting agreement. 750 ILCS 5/602.1(b) (West 1998). Either a joint parenting agreement or a joint parenting order must contain a procedure under which disputes may be mediated or otherwise resolved. 750 ILCS 5/602.1(b) (West 1998). Accordingly we hold that because a trial court is authorized to enter a joint parenting order on its own motion, if the parties fail to produce one, the trial court may also, consistent with the Act, modify the parties' proposed joint parenting agreement, if it fails to protect the best interest of the children. See *Ingram*, 259 Ill. App. 3d at 689.

■ The mandatory mediation of future disputes, when required in a joint custody order, is appropriate and consistent with *Aleshire*, because joint custody is premised on the parents' ability to cooperate towards the best interest of their children. See 750 ILCS 5/602.1(c)(1) (West 1998); *In re Marriage of Demattia*, 302 Ill. App. 3d 390, 396 (1999) (holding that joint custody was an appropriate arrangement as long as the parties remained cooperative); *In re Marriage of Heinze*, 257 Ill. App. 3d 782, 789 (1994) (recognizing that joint custody orders are appropriate only when the parents have displayed an unusual capacity to cooperate). A trial court's finding that joint custody is appropriate depends on a capacity for cooperation between the parties, which also implies they will likely respond well to mediation. See *Aleshire*, 273 Ill. App. 3d at 84 (holding a trial court may order mediation only after finding that mediation would likely be useful). Furthermore, a mandatory mediation does not unduly restrict access to the courts or require futile negotiations because, if the parties' ability to cooperate has deteriorated such that mediation is no longer ef-

fective, they may seek to terminate joint custody. See *Melton*, 288 Ill. App. 3d at 1087 (holding that when the parties can no longer cooperate towards the best interest of their children joint custody should be readily terminated).

Several other jurisdictions have recognized the utility of mandatory mediation and have approved its use by trial courts in custody and visitation disputes. For example, in *In re Marriage of Goldberg*, 691 S.W.2d 312 (Mo. Ct. App. 1985), the Missouri Court of Appeals found that mediation reduces the friction inherent in most custody arrangements and is necessary for successful "shared parenting" in joint custody situations. *Goldberg*, 691 S.W.2d at 316. The *Goldberg* court further held that the trial court could order mandatory mediation as long as that order did not unconstitutionally impair the parties' access to the judicial system. *Goldberg*, 691 S.W.2d at 316; accord *Aleshire*, 273 Ill. App. 3d at 84 (holding, in *dicta*, that local rules requiring mediation are appropriate provided the trial court must make an initial determination that the dispute is appropriate for mediation).

Similarly, in *In re Marriage of Biel*, 114 Wis. 2d 191, 336 N.W.2d 404 (App. 1983), the Wisconsin Court of Appeals held that a mediation order requiring the parties to attempt to voluntarily resolve their dispute with the aid of a social worker was consistent with the Wisconsin statute. *Biel*, 114 Wis. 2d at 195, 336 N.W.2d at 406. However, the court held that a trial court must first find that mediation is necessary and may not order mediation as "a standing procedure." *Biel*, 114 Wis. 2d at 196, 336 N.W.2d at 407. Subsequently, Wisconsin has amended its dissolution statute and now requires mediation as the first available remedy when physical custody of a child is disputed. See *In re Paternity of Stephanie R.N.*, 174 Wis. 2d 745, 771, 498 N.W.2d 235, 244 (1993); Wis. Stat. Ann. § 767.11(5) (West Supp. 1999).

In *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996), the West Virginia Supreme Court examined the use of mediation nationwide and several academic studies discussing the impact of mediation. *Carter*, 196 W. Va. at 246, 470 S.E.2d at 200. The court found that most research indicates that mediation can reduce the initial level of conflict between parents, which in turn can reduce long-term conflict. *Carter*, 196 W. Va. at 247, 470 S.E.2d at 201. The court further noted that mediation reduces the need for formal adjudication. *Carter*, 196 W. Va. at 247, 470 S.E.2d at 201. The court held that, while not required by West Virginia statute, a trial court possessed the authority to order mediation of disputes. *Carter*, 196 W. Va. at 248, 470 S.E.2d at 202. Moreover, the West Virginia Supreme Court strongly encouraged

the increased use of mediation and suggested that mediation might be successful even when traditional remedies such as contempt proceedings had failed to resolve disputes. *Carter*, 196 W. Va. at 249-50, 470 S.E.2d at 203-04; see also *Spear v. Spear*, 203 W. Va. 224, 228, 506 S.E.2d 820, 824 (1998) (Workman, J., concurring) (emphasizing the need for programs to facilitate the growth of mediation in domestic relations cases).

The use of mediation in domestic relations matters is not confined to jurisdictions outside Illinois. In Illinois, many judicial circuits provide for mediation of domestic relations matters by local rule, pursuant to their authority to regulate dockets and calendars. See *Aleshire*, 273 Ill. App. 3d at 84. Several circuits allow mediation at the discretion of the trial court. See, *e.g.*, 16th Judicial Cir. Ct. R. 15.22 (eff. October 5, 1988); 21st Judicial Cir. Ct. R. 9.1 (eff. March 17, 1997). Other circuits have made mediation mandatory and require leave of the court to set a hearing without completing mediation. See, *e.g.*, 11th Judicial Cir. Ct. R. 105(C) (eff. March 1, 1995); 18th Judicial Cir. Ct. R. 15.18(I)(A)(1) (eff. March 1, 1998); 19th Judicial Cir. Ct. R. 18.03(a) (eff. January 2, 1997). The adoption of these rules reflects a growing recognition by the Illinois courts that mediation is a useful method of resolving custody and visitation disputes without subjecting the parties to the expense and hostility inherent in the traditional adversarial process.

■ In the present case, the parties entered into a joint parenting agreement that provided a detailed method of mediating disputes but allowed either party to opt out of the mediation provisions without cause. The trial court determined that this opt-out provision was not in the best interest of the parties' minor child and modified it. The trial court is in the best position to observe the parties, and its determination that mediation will be useful to resolve future dispute should be given great weight. See *Melton*, 288 Ill. App. 3d at 1088. The trial court noted that mediation is an alternative to litigation that is less expensive and that does not align the parties as adversaries. We agree and find that mandatory arbitration of disputes arising from a joint custody agreement is often in the best interest of the children.

Mediation preserves the resources of the parties, leaving them available to meet the needs of their children, and does not pit the parties against one another. Rather, it fosters the cooperation necessary for joint custody to succeed. See *Carter*, 196 W. Va. at 247, 470 S.E.2d at 201; see also *Heinze*, 257 Ill. App. 3d at 789. Although mandatory mediation may be inappropriate when, for example, there is a history of abuse or the parties have demonstrated an inability to cooperate, the same factors would likely preclude an award of joint custody in the

first place. See *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 523 (1995). Moreover, in this case, the trial court recognized that mandatory mediation is not appropriate for all disputes and exempted financial matters and emergencies from its order.

Therefore, we find that the trial court did not abuse its discretion when it ordered that the mediation procedures contained within the parties' proposed joint parenting agreement be modified to require mediation except in the case of an emergency.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

RAPP and GALASSO, JJ., concur.