KONI STEWARD, on Behalf of Kelsi Schluter, a Minor, Petitioners-Appellees, v. LESLIE PAUL SCHLUTER, Respondent-Appellant.

Fourth District    No. 4—03—0749

Opinion filed September 30, 2004.

James A. Martinkus, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant.

John W. Foltz, of Glasgow & Foltz, of Monticello, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is a consolidated appeal from the entry of a plenary order of protection against respondent, Leslie Schluter. Respondent argues that the trial court erred when it (1) precluded him from calling his child's counselor, Dr. Andrea Klein, to testify on his behalf; and (2) ordered him to reimburse Piatt County for fees paid to the domestic violence attorney representing petitioner, Koni Steward. We affirm.

On November 1, 2002, Steward, on behalf of the minor child, Kelsi Schluter, filed a petition for an emergency order of protection against respondent. Koni is respondent's ex-wife and the mother of Kelsi. The petition alleged that respondent had physically abused Kelsi on several occasions by throwing a notebook at her, shoving his face into hers and yelling at her, shoving her up the stairs, and calling her names. At the time Koni filed the petition, Kelsi was living with respondent and

had been in his custodial care since November 1998. After an *ex parte* hearing, the trial court issued an emergency order of protection and set a hearing for plenary order of protection for November 21, 2002.

On November 4, 2002, respondent filed a motion to reopen the cause and rehear the petition for an order of protection, and also filed a response to the petition for an order of protection. Prior to the hearing on respondent's motion, Koni requested the appointment of a domestic violence attorney pursuant to Piatt County Administrative Order 97—1. The trial court appointed John Foltz as the domestic violence attorney and also appointed Suzanne Wells as guardian *ad litem* for Kelsi.

On November 5, 2002, respondent subpoenaed Kelsi's mental health counselor, Klein, to testify in this case and to bring all notes of counseling with Kelsi. On November 19, 2002, Koni filed a motion to exclude the testimony of Klein, and the guardian *ad litem* filed a motion to quash the subpoena of Klein. Both the motion to exclude and the motion to quash were based upon a prior court order and stipulation agreement in the case of *In re* Marriage of Schluter, Nos. 97—D—78, 99—OP—26 (Cir. Ct. Piatt Co.). In that stipulation agreement, the parties agreed, in relevant part:

"Until further order of this court Kelsi Schluter shall be furnished with mental health counseling not less frequently than once per month by a counselor selected from among those providers authorized by the health care plan covering the child. The counselor shall report the progress and any concerns to the [g]uardian *ad litem* not less frequently than quarterly. The counselor selected may not be called as a witness by either parent to testify in any further proceeding or hearing in this or any other proceeding. Nothing in this paragraph shall be interpreted to prevent the [g]uardian *ad litem* from calling such counselor to testify in any proceeding that may be instituted by the [g]uardian *ad litem* or as otherwise mandated by law."

Also attached to the motion to exclude was a letter from the guardian *ad litem* to Klein, which stated in part that the purpose of this provision in the stipulation agreement was "so that Kelsi could have a safe confidential place to discuss her concerns about either parent and neither parent could use this counseling in any further proceeding." After hearing arguments from all parties, the trial court granted the motions, excluding Klein's testimony and quashing the subpoena.

After the trial court barred Klein's testimony, respondent provided an offer of proof with regard to her testimony. In that offer of proof, respondent stated that Klein would have testified that Kelsi's demeanor was inconsistent with her statements about the abuse. He

stated that Klein would have testified that her opinion as a psychotherapist and child counselor was that Kelsi had not been abused or treated in the manner she claimed.

The trial court heard testimony on November 22, 2002; January 27, 2003; February 5, 2003; February 6, 2003; February 27, 2003; and February 28, 2003. The court entered extensions of the emergency order of protection on November 22, 2002; February 6, 2003; February 28, 2003; and March 5, 2003.

On April 28, 2003, the trial court approved, over objection, the fees filed by the domestic violence attorney in the total sum of $12,435.68 and by the guardian *ad litem* in the sum of $6,071.83. The court directed the county treasurer to pay the fees. On July 29, 2003, the court signed the plenary order of protection. On August 28, 2003, respondent filed his notice of appeal from the plenary order of protection.

On September 10, 2003, the trial court approved another $945 in fees for the domestic violence attorney and appointed him to continue to represent Koni on appeal. The court then held a hearing on the apportionment of the fees of both the guardian *ad litem* and the domestic violence attorney. The court ordered both parties to reimburse the county for the fees of the guardian *ad litem*, with each paying half. The court also ordered that respondent reimburse the county for two-thirds of the domestic violence attorney's fees and Koni reimburse the county for one-third of the fees. On October 8, 2003, respondent filed a notice of appeal regarding this issue.

On November 7, 2003, the trial court entered a judgment in favor of Piatt County and against respondent and ordered him to reimburse the county the sum of $11,955 for domestic violence attorney fees and guardian *ad litem* fees. The court entered the order *nunc pro tunc* September 10, 2003. Respondent appealed, and on respondent's motion, this court consolidated all of respondent's appeals in this case.

On appeal, respondent argues that the trial court erred by (1) excluding the testimony of Kelsi's counselor, Klein, and (2) ordering respondent to reimburse Piatt County for the domestic violence attorney fees. We affirm.

Respondent first contends that the trial court erred by precluding him from calling Kelsi's counselor, Klein, to testify at the hearings for the plenary order of protection. The admissibility of evidence falls within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. *Mowen v. Holland*, 336 Ill. App. 3d 368, 372, 783 N.E.2d 180, 183 (2003). Here, the court noted a 1999 court-approved stipulation agreement between the parties that required Kelsi to attend counseling sessions and provided as follows:

"The counselor selected may not be called as a witness by either parent to testify in any further proceeding or hearing in this or any other proceeding."

The effect of the stipulation, if enforced, would bar either parent from calling Kelsi's counselor as a witness in any proceeding.

■ Parties are generally bound by their stipulations unless such stipulations are shown to be unreasonable, the result of fraud, or violative of public policy. *In re Marriage of Sanborn*, 78 Ill. App. 3d 146, 149, 396 N.E.2d 1192, 1195 (1979). However, we note that the trial court is not bound by spousal agreements made in marital dissolution proceedings providing for the support, custody, and visitation of the children. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 400, 806 N.E.2d 727, 731 (2004); see also 750 ILCS 5/502(b) (West 2002). Instead, the court is obligated in such cases "to protect the best interests of the children and is not bound by agreements between the parties which would circumvent judicial protection of the children's interests." *In re Marriage of Ealy*, 269 Ill. App. 3d 971, 975, 647 N.E.2d 307, 310 (1995); *In re Marriage of Duffy*, 307 Ill. App. 3d 257, 260, 718 N.E.2d 286, 289 (1999) ("Parents may not bargain away the interest of their children and the court is not bound by an agreement that does not protect the best interest of the children").

■ We conclude that the same consideration of a child's best interests should apply in this case. Where the best interests of the child were the primary consideration for the trial court, it was not bound by the stipulation agreement made by the parents in a separate dissolution proceeding. The testimony of Dr. Klein might well have been helpful to the trial court and served the best interests of the child. The record shows Kelsi testified at length concerning her involvement with each parent. The record suggests that she was influenced in her testimony. However, that determination is for the trial court.

Further, while the trial court noted the existence of the stipulation between the parents in the dissolution proceedings, it focused more on the reasons behind the stipulation rather than any binding authority on the parties. It noted that the agreement was based upon "an extensive report" and recommendation by Dr. Klein that "Kelsi needs to have a save [*sic*] place, a place of trust and confidence that she can go to and discuss things about either parent." The perceived intent of the parties was "to provide an absolute place of confidence that she could go and discuss matters without fear that they would be disclosed to either parent." The court recognized that at the time the agreement was made, both parents were "looking more toward Kelsi's benefit than their own." In addition, the guardian *ad litem* opposed

having Klein testify, and there were no legal factors that would compel Klein's testimony. The court did not abuse its discretion in barring the testimony of Klein.

This case raises concerns because of the placement of Kelsi as the center of argument between selfish parents who we submit have forgotten the best interests of the child in an effort to win a "show-me" contest. The record suggests, and as the trial court stated, "these two people, two parents, have been at each other's throat about Kelsi for a number of years." The loser is Kelsi, and it appears that the parental battle has influenced her. Mom and Dad have forgotten that, when a couple is happily married, there is need for cooperation and involvement as to children. When Mom and Dad go their separate ways, there is then an even greater need for cooperation and involvement.

■ Respondent also contends that the trial court erred when it ordered him to reimburse Piatt County for fees paid to the domestic violence attorney. In Piatt County Administrative Order 97—1, the circuit court created the position of domestic violence attorney. The domestic violence attorney was created to represent *pro se* petitioners in domestic violence proceedings. The order provided that upon completion of the representation, the domestic violence attorney shall provide an itemization of fees with the court and shall be paid by the county. The order also provided:

> "Upon the allowance of a petition for fees by the Domestic Violence Attorney, the court may order reimbursement by the parties to the County for the expense of the Domestic Violence Attorney. If the Domestic Violence Attorney represented the petitioner, and a plenary order of protection was entered during such representation, then the court, considering the financial resources of the parties, may order the respondent to reimburse the County for the expense of the Domestic Violence Attorney." Piatt County Adm. Order 97—1 (eff. June 17, 2002).

Respondent does not challenge the trial court's authority to appoint an attorney to represent petitioner, only the court's authority to order the parties to reimburse the county for fees paid to the appointed attorney.

This court upheld the trial court's authority to appoint an attorney to serve as a domestic violence attorney in *Scroggins v. Scroggins*, 327 Ill. App. 3d 333, 337, 762 N.E.2d 1195, 1199 (2002). Respondent mistakenly asserts that the holding in *Scroggins* is based upon the Domestic Relations Legal Funding Act (Legal Funding Act) (705 ILCS 130/1 through 30 (West 2002)). Although we cited the Legal Funding Act in support of our finding, *Scroggins* did not rely upon it

for the holding that courts have the authority to appoint counsel to represent an indigent person in domestic relations matters. *Scroggins*, 327 Ill. App. 3d at 337, 762 N.E.2d at 1199. Courts have the authority to appoint counsel pursuant to the inherent power of the judiciary to regulate the practice of law and to conduct the orderly administration of justice. *People ex rel. Conn v. Randolph*, 35 Ill. 2d 24, 28, 219 N.E.2d 337, 340 (1966).

The applicable statute in this matter is the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 through 401 (West 2002)), under which the order of protection was issued. Section 214 of the Domestic Violence Act provides that, as a remedy, the trial court may:

"Order respondent to pay petitioner for losses suffered as a direct result of the abuse, neglect, or exploitation. Such losses shall include, but not be limited to *** reasonable attorney's fees ***." 750 ILCS 60/214(b)(13) (West 2002).

Respondent argues that petitioner did not suffer any direct losses or incur any attorney fees in this case because the county paid the domestic violence attorney fees. We are unpersuaded.

The trial court determined that respondent's abuse justified the entry of an order of protection against him. The fact that the domestic violence attorney was appointed by the court and paid for by the county does not change the fact that respondent's actions directly caused the petition to be filed in the first place. The Domestic Violence Act authorizes the court to order respondent to pay for losses suffered as a direct result of his abuse, and is meant to be construed liberally. 750 ILCS 60/102 (West 2002). Had petitioner hired an attorney on her own, the court could clearly have ordered that the attorney fees be paid by the respondent. 750 ILCS 60/214(b)(13) (West 2002). We see no reason why the court should be prevented from ordering respondent to pay for petitioner's attorney in this case where the attorney was provided to petitioner by the court.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., concurs.

JUSTICE COOK, specially concurring:

I agree a court is not bound by agreements between the parties that would circumvent judicial protection of the children's interests. I disagree, however, with the majority's suggestion that it might have decided this issue differently if it had been the trier of fact. "The

testimony of Dr. Klein might well have been helpful to the trial court and served the best interests of the child." 352 Ill. App. 3d at 1200. The trial court got it exactly right when it noted that the child needed to have a safe place where she could discuss matters without fear that they would be disclosed. The court's statement, joined in by Dr. Klein and the guardian *ad litem*, goes to a fundamental tenet of mental health counseling. "Effective psychotherapy *** depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10, 135 L. Ed. 2d 337, 345, 116 S. Ct. 1923, 1928 (1996).

In most cases, the best interests of the child is not served by having the child's treating mental health counselor testify. The trial court did not appoint a mental health counselor so that the parties would have a witness the next time they returned to court. The court appointed the counselor to help the child, to provide the child with someone to confide in, someone with whom she could freely discuss her feelings and concerns. The parties are to be complimented for their agreement that the counselor would not be called as a witness. It would be exceptional for such an agreement to be disregarded. "[A]nyone seeking the nonconsensual release of mental health information faces a formidable challenge ***." *Norskog v. Pfiel*, 197 Ill. 2d 60, 72, 755 N.E.2d 1, 10 (2001).