# Illinois Official Reports

## Appellate Court

*In re Marriage of Eckersall*, 2014 IL App (1st) 132223

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF RAYMOND A. ECKERSALL III, Petitioner and Counterrespondent-Appellee, and CATHERINE ECKERSALL, Respondent and Counterpetitioner-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2223 |
| Filed | May 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The "custody/visitation injunction order" entered by the trial court in marriage dissolution proceedings and referred to by the parties and the court as an injunction was not an appealable injunctive order under Supreme Court Rule 307(a)(1), since the order placed terms and conditions on the parties' visitation rights, it did not adjudicate any substantive issues, it precluded the parties from engaging in specified conduct that could be detrimental to the children's welfare, there was no indication of any injunctive relief, there was no indication that a prohibitory injunction was sought or that a grant of injunctive relief was intended, and the order was not an injunction or the functional equivalent of an injunction; rather, it was ministerial to the extent that it set the terms and conditions on visitation, and in the absence of any injunctive relief, the appeal was dismissed for lack of jurisdiction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-D-1635; the Hon. William S. Boyd, Judge, presiding. |
| Judgment | Appeal dismissed. |

Counsel on Appeal

Pamela Hutul, Benton Page, and Errol Zavett, all of Davis Friedman, LLP, of Chicago, for appellant.

No brief filed for appellee.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski concurred in the judgment and opinion.
Justice Mason dissented, with opinion.

## OPINION

¶ 1    All too frequently children become casualties, caught in the crossfire of their parents' hostilities. Alert judges and lawyers aware of the signs of potential trouble, as a matter of course, will enter an order placing restrictions on the parents when their children are in their custody. Restrictions, for purposes of illustration, may preclude the parents from engaging in electronic surveillance, using alcohol and drugs, discussing the divorce, administering corporal punishment, and criticizing, demeaning, or disparaging the other parent. At issue is this type of order, which in this case was characterized as an "injunction."

¶ 2    Catherine Eckersall filed what she contends is an interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), from a so-called injunction order entered against her and Raymond Eckersall. The order directs the divorcing couple from participating in certain behaviors when their three children are in their custody. Catherine argues: (i) the trial court lacked jurisdiction to enter the order in the absence of either party filing a motion; (ii) the order violates her right to due process because it was entered without an evidentiary hearing; (iii) the trial court failed to make findings of fact as required by section 11-101 of the Illinois Code of Civil Procedure (735 ILCS 5/11-101 (West 2012)); (iv) the order infringes on her rights to parent her children in violation of the fourteenth amendment (U.S. Const., amend. XIV), and section 2, article I, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2); and (v) the order violates her freedom of speech under the United States and Illinois constitutions.

¶ 3    We dismiss the appeal because the trial court order did not enter an injunction subject to a Rule 307 interlocutory appeal.

¶ 4                    BACKGROUND

¶ 5    On February 25, 2013, Raymond Eckersall filed a petition for dissolution of marriage to Catherine and for joint custody of the couple's three daughters, ages 14, 12, and 10. Catherine filed a counterpetition for dissolution of marriage and also sought joint custody, but requested sole custody if the parties could not reach an agreement on custody. On April 8, 2013, by agreement of the parties, the trial court appointed attorney Howard Rosenberg to represent the minor children under section 506(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/506(a)(3) (West 2012)).

¶ 6        Raymond had moved out of the marital home, and on March 21, 2013, he filed a petition to set a temporary parenting schedule stating that he and Catherine had been unable to reach an agreement on visitation. On May 1, 2013, the trial court ordered the parties and the minor children to immediately begin family therapy and scheduled a June 5 hearing on Raymond's petition to set a temporary parenting schedule if the parties could not reach an agreement in the interim.

¶ 7        After the June 5 status hearing, the trial court entered an order scheduling a June 24 hearing date for the petition to set a temporary parenting schedule, stating, "The parties shall enter a parenting order (enjoining discussion of court/case related issue with the children) on the June 24 status date." On June 24, 2013, the trial court entered an order setting July 10, 2013, as a status date "for the entry of a custody/visitation injunctive order." The court warned, "If the parties cannot reach an agreement on the terms of said order, the court shall set the terms."

¶ 8        At the July 10 status hearing, the counsel for the minor children submitted to the trial judge a proposed custody and visitation injunction order. He first informed the court he met with the children and worked out a "decent schedule" that provided for visitation with their father all day on Saturday and one week night and that at the children's request, Raymond's family was not to be present while they are in their father's custody. The children's representative also told the court that he and the parties negotiated the terms of a "prophylactic" order setting forth the conditions of visitation but were unable to reach agreement on the terms. Catherine and her attorney, as well as Raymond's attorney, were present in court. Under the proposed order, the parties would be prohibited from engaging in specific types of conduct regarding the minor children, including: (1) beating, striking, threatening or in any way interfering with the personal liberty of the minor children; (2) discussing any aspect of the pending litigation in the presence of the minor children, including custody, visitation, support, grounds for dissolution, financial information, and court dates; (3) questioning or discussing with the children their preferences regarding custody or visitation; (4) questioning, discussing, rehearsing or coaching the minor children regarding court testimony or interviews with the court, mediators, attorneys, investigators or any other person related to the dissolution proceeding; (5) engaging in any kind of electronic surveillance of the other party or the minor children; (6) using, consuming or possessing alcohol or nonprescription drugs in the presence of the minor children; (7) permitting an unrelated member of the opposite sex to reside on an overnight basis while the minor children are present; and (8) criticizing, demeaning, disparaging or placing either party in a negative light. The order also prohibited either party from using corporal punishment in disciplining the children or from removing the children from the state without written consent from the other party or by court order.

¶ 9        Raymond's attorney requested a single change–that the parties be permitted to have alcohol in the home, even if they were not permitted to drink it in the presence of the children. Catherine's attorney, however, objected to the order as a whole on the grounds that it infringed on Catherine's right to parent and communicate with her children. Her attorney asserted the minor children were having productive conversations with their mother, who encouraged the children to attend therapy sessions and to see their father, and the order would prevent the children from confiding in their mother about the divorce. After hearing from both sides, the trial court agreed to the change requested by Raymond and entered the order over Catherine's objection. On July 16, 2013, Catherine filed a notice of appeal.

¶ 11    As an initial matter, neither Raymond nor the children's representative filed a responsive brief. Because the record is not complex, and the claimed errors can be decided without the aid of an appellee's brief, we will decide this appeal on Catherine's brief alone. *State Farm Mutual Insurance Co. v. Ellison*, 354 Ill. App. 3d 387, 388 (2004).

¶ 12    A trial court may grant temporary relief in the nature of temporary maintenance or child support, preliminary injunctions, "or *** *other appropriate temporary relief*." (Emphasis added and internal quotation marks omitted.) *In re Marriage of Meyer*, 197 Ill. App. 3d 975, 978 (1990). "Section 501(a)(3) [of the Act] is an all-inclusive provision which allows a party to move for any other appropriate temporary relief, such as temporary custody; exclusive possession of the marital residence; sequestration of assets; and temporary attorney fees." *Id*. "Temporary relief *** is often in the form of neither a temporary restraining order nor a preliminary injunction." *Id*.

¶ 13    In the initial stages of a dissolution proceeding, a trial court may enter temporary orders addressing custody of minor children and the terms of visitation with the noncustodial parent. The issue of visitation is governed by section 607(a) of the Act, which provides that "[a] parent not granted custody of the child is entitled to reasonable visitation rights." 750 ILCS 5/607(a) (West 2012). The "trial court has broad discretion in fashioning the terms of visitation and those terms will not be overturned absent proof that the court has abused its discretion." *In re Marriage of Engelkens*, 354 Ill. App. 3d 790, 792 (2004). An abuse of discretion exists where no reasonable person would agree with the position of the trial court. *Brax v. Kennedy*, 363 Ill. App. 3d 343, 355 (2005).

¶ 14    Shortly after initiating the dissolution proceedings, Raymond filed a petition to set a temporary parenting schedule. At the July 10 status hearing on that petition, the children's representative informed the judge the parties reached an informal agreement as to visitation, with some limitations on Raymond's family requested by the children. Although the court did not enter a formal visitation schedule as requested by Raymond's attorney, the court entered the order at issue, setting forth the terms and restrictions on each parent when the minor children are in their custody. The children's representative drafted the order. A children's representative is tasked with "advocat[ing] what [he or she] finds to be in the best interests of the child after reviewing the facts and circumstances of the case." 750 ILCS 5/506(a)(3) (West 2012). The children's representative carries "the same authority and obligation to participate in the litigation as does an attorney for a party." 750 ILCS 5/506(a)(3) (West 2012). Orders like the one here are a wise and often necessary tool that diligent and experienced child representatives or GALs, parents' attorneys, and judges will insist on. While dissolution proceedings often become overly contentious, where custody of minor children is involved, the parents' battle must yield to the welfare of the children and to the trial court's power to set ground rules for the parents while the children are in their custody. *In re Marriage of Duffy*, 307 Ill. App. 3d 257, 261 (1999) (trial court authorized to enter joint parenting order on its own motion and modify the parties' proposed joint parenting agreement, if it fails to protect best interest of the children).

¶ 15    After several meetings with Raymond and Catherine, as well as the children, Rosenberg determined that an order establishing rules of conduct was needed. Catherine contends, however, that the trial court lacked jurisdiction to enter the order in the absence of a motion by either party and that by entering an injunction without a hearing, the trial court violated her

right to due process. She also asserts the order violates her right to parent her children and to engage in free speech.

¶ 16     Catherine's assertion that her right to due process was denied is without merit. Before the July 10 status hearing, the trial judge informed the parties that if they could not reach an agreement on a "parenting order (enjoining discussion of court/case related issue with the children)," he would set the terms of the order. Before entering the July 10 order, the trial judge heard from the attorneys for both parties regarding its terms and indeed one of the provisions was changed at the request of Raymond's attorney. The trial judge also specifically asked Catherine's attorney to explain why she thought the order was inappropriate. Therefore, both parties were given an opportunity to raise specific and general objections before the trial court approved the terms of the order. Further, the order states it "is subject to hearing upon request of either party as to any or all of the prohibitions set forth therein." Thus, Catherine or Raymond may request a hearing before the judge to present evidence showing why this ongoing order should be changed or rescinded.

¶ 17                               Was the Order an Injunction?

¶ 18     As a threshold issue we must determine whether this order entered by the trial court constitutes an injunction. If it is not, its entry is not an appealable interlocutory order under Illinois Supreme Court Rule 307(a) (eff. Feb. 26, 2010), and this court lacks jurisdiction to hear the appeal.

¶ 19     Illinois Supreme Court Rule 307(a)(1) states that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court: *** granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010). "An injunction has been defined as a ' "judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing." ' " *In re Marriage of Tetzlaff*, 304 Ill. App. 3d 1030, 1036 (1999) (quoting *In re A Minor*, 127 Ill. 2d 247, 261 (1989), quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)). The order entered by the trial court is titled a "custody/visitation injunction order" and the parties and trial judge refer to the order as an injunction. But what constitutes an appealable injunctive order under Rule 307(a)(1) depends on the substance of the action, not its form. *In re A Minor*, 127 Ill. 2d at 260. "Not every nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing." *Id.* at 261-62. For example, court orders that are ministerial or administrative cannot be the subject of an interlocutory appeal under the rule allowing appeal from interlocutory order granting an injunction. *Id.* at 262. The character of an order must be determined in the context of the facts and relief sought in each case. *In re Marriage of Meyer*, 197 Ill. App. 3d at 978.

¶ 20     Despite its label, the order's effect and aim is to place terms and conditions on the parties' visitation rights. The order regulates an aspect of the pretrial proceeding, namely, the parties' custody and visitation. The order does not purport to adjudicate any substantive issues, but, rather, precludes the parents from engaging in specified conduct that could be detrimental to the welfare of the children. Evidence of this intent appears in the record of proceedings. During a discussion with the trial judge about the children's reluctance to see their father and their compliance with orders issued by the court, including the order to attend therapy, the children's representative, stated, "Visitation, therapy, you want them to know something, put it

- 5 -

in an order. Make a copy for them." In response, before entering the order, the experienced trial judge stated, "they need to understand that I run this show. They do not."

¶ 21 Absent from the record are the indicia of injunctive relief. An injunction is an extraordinary remedy applicable only to situations where an extreme emergency exists and serious harm would result if it were not issued. *In re Marriage of Centioli*, 335 Ill. App. 3d 650, 654 (2002). A party seeking an injunction must file a complaint pleading facts that justify a right to injunctive relief. *In re Marriage of Schmitt*, 321 Ill. App. 3d 360, 371 (2001). Section 501(a)(2) of the Act requires a party seeking a temporary restraining order or injunction to present an affidavit showing a factual basis for relief. 750 ILCS 5/501(a)(2) (West 2012). The party must demonstrate that he or she: (1) possesses a certain and clearly ascertainable right that needs protection; (2) will suffer irreparable harm without the protection of the injunction; (3) has no adequate remedy at law; and (4) is likely to succeed on the merits of the case. *Centioli*, 335 Ill. App. 3d at 654. Further, section 11-101 of the Illinois Code of Civil Procedure requires that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its entry." 735 ILCS 5/11-101 (West 2012).

¶ 22 The children's representative has the authority to file a complaint or petition for an injunction, along with an affidavit showing a factual basis for relief. The absence of a petition and an affidavit or an order from the trial judge setting forth reasons why an injunction was necessary all goes to show that the children's attorney was seeking something other than an injunction and that the trial court viewed its order as something other than granting what amounts to injunctive relief. We "presume that a trial judge knows and follows the law unless the record demonstrates otherwise." *People v. Jordan*, 218 Ill. 2d 255, 269 (2006).

¶ 23 In addition, the order was intended to place restrictions on the parents and, if necessary, inform the children of the conditions of visitation. It was not the equivalent of a preliminary injunction whose function is "to preserve the status quo pending resolution of the merits of the case." *In re Marriage of Slomka*, 397 Ill. App. 3d 137, 143 (2009). As noted, a trial court has great latitude in setting the terms and conditions of visitation. And, at the suggestion of the children's representative or the lawyers or on its own, the court may arrive at terms and conditions that serve the best interests of the minor children. *In re Marriage of Seitzinger*, 333 Ill. App. 3d 103, 112 (2002) ("A trial court has broad discretion in determining the visitation rights of a nonresidential parent with the best interest of the child being of primary concern.").

¶ 24 There is no evidence suggesting that the children's representative or the parents sought a prohibitory injunction to preserve the status quo or the trial judge intended to grant injunctive relief without following the statutory requirements. Plus, the character and function of the order more closely conform to appropriate temporary relief as detailed in the Act than an injunction. Accordingly, we find the order is not an injunction or the functional equivalent of an injunction.

¶ 25 The dissent focuses on the order as an injunction despite the order lacking the attributes of an injunction. The focus should be on the Act and its procedures and standards and methods. Dissolution of marriage proceedings take place under the authority of the Act, and the Act gives the trial court broad discretion in fashioning the custody and visitation order. *In re Marriage of Oros*, 256 Ill. App. 3d 167, 170 (1994). Once filed, the petition unleashes the Act's provisions and many aspects of the family's life before the filing become subject to the court's discretion, including custody and visitation, afterwards. *In re Marriage of Davis*, 341 Ill. App. 3d 356, 359 (2003). "[C]ustody proceedings under the Marriage and Dissolution of

Marriage Act are guided by the overriding lodestar of the best interests of the child or children involved" (*In re A.W.J.*, 197 Ill. 2d 492, 497-98 (2001)), and when deciding issues pertaining to custody, the trial court has broad discretion over the proceedings. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145.

¶ 26    Whether contested or not, divorce often leads to poor decisions on the part of the parents due to the emotional and financial pressures divorce triggers. Trial courts, along with or as part of temporary visitation and custody orders, enter "rules of the road" orders like this one. Orders by their nature assign burdens and limits and this order merely assigns temporary and modifiable burdens and limits on both parents when the children are in their care. See *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶ 49 ("just because an order requires parties to do something or to refrain from doing something *** does not necessarily follow that the order is an injunction"). Significantly, the Act also places the best interest of the children above the interests of the parents, which usually interferes with the very thing the dissent takes issue with–the parents "fundamental right to care for and guide [their] children and, absent to exceptional circumstances, to do so without judicial interference." *Infra* ¶ 45.

¶ 27    For instance, the right to reasonable visitation in section 607(a) of the Act "implies a ' "best interest of the child" ' standard"–that is, a noncustodial parent's right to visitation in the first place is determined by the child's best interests. *In re Marriage of Chehaiber*, 394 Ill. App. 3d 690, 696 (2009). Section 607(a) provides that a noncustodial parent has a right to reasonable visitation, "unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." 750 ILCS 5/607(a) (West 2012). The committee comment to section 407 of the Uniform Marriage and Divorce Act, the model statute upon which section 607(a) is based, illustrates the primacy of the best interests of the child standard in making accommodations for visitation. This comment provides, in relevant part, as follows:

> "With two important exceptions, this section states the traditional rule for visitation rights. The general rule implies a 'best interest of the child' standard. Although the judge should never compel the noncustodial parent to visit the child, visitation rights should be arranged to an extent and in a fashion which suits the child's interest rather than the interest of either the custodial or noncustodial parent. The empirical data on post-divorce living arrangements suggests that, if the judge can arrange visitation with a minimum of contest, most parties will eventually reach an accommodation and the bitterness accompanying the divorce will gradually fade." Unif. Marriage and Divorce Act § 407 (amended 1973), 9A U.L.A., Comment (1998).

¶ 28    Orders like the one here simplify the parent's interaction with their children by addressing usual and oft-contentious-producing issues before anything bad happens. All too often divorce turns parents into malicious foes, and children into pawns. And even when it does not, divorce frequently exposes children to negative behavior and parental conflict that can have harmful, long-lasting repercussions on them. For the sake of the children, precautions are preferable to remedial measures, prevention is preferable to punishment, and court ordained protocol is preferable to parental anarchy. Experienced judges and lawyers realizing this err on the side of protection rather than risk a child's well-being.

¶ 29    Because this court's jurisdiction is premised on Catherine's characterization of the circuit court's order of July 10, 2013, as one granting injunctive relief, and we find that relief was not granted by the challenged order, we lack jurisdiction to entertain this appeal.

- 7 -

¶ 30                                              CONCLUSION

¶ 31         No injunctive relief under Supreme Court Rule 307(a)(1) was granted by the circuit court's order. Instead, the order was ministerial, setting the terms and conditions on visitation. We have no jurisdiction to address this appeal.

¶ 32         Appeal dismissed.

¶ 33         JUSTICE MASON, dissenting.

¶ 34         I believe we have jurisdiction to review the broad-ranging injunction entered by the trial court and that the order Catherine appeals from is defective on both procedural and substantive grounds. Therefore, I respectfully dissent.

¶ 35         To determine whether an order is injunctive in nature, a court must look beyond form and address the substance of the order. *In re A Minor*, 127 Ill. 2d 247, 260 (1989) (construing an order prohibiting publication of a minor's name as an injunction even though not labeled as such). The majority concedes this, but concludes we lack jurisdiction under Supreme Court Rule 307(a)(1) (Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010)), reasoning that because there is no evidence that the order was intended to grant injunctive relief, we should presume the order is not an injunction.

¶ 36         This reasoning turns the logic of *In re A Minor* on its head. The order is labeled an "injunction"; it "restrains" and "enjoins" the parties, "until further order," from 11 categories of conduct and speech, which are "prohibited." It is only by ignoring the plain language of the order that the majority is able to characterize it as something other than what it says it is.

¶ 37         The entry of the order was not accompanied by any of the procedural protections normally attendant to the award of this drastic remedy. The court did not have before it a verified pleading stating a cause of action to which injunctive relief is ancillary. *In re Marriage of Hartney*, 355 Ill. App. 3d 1088 (2005) (complaint for preliminary injunction must plead facts that clearly establish a right to relief); *Exchange National Bank of Chicago v. Cullerton*, 17 Ill. App. 3d 392, 394 (1974) (verification essential to grant of injunctive relief); 750 ILCS 5/501(a)(2) (West 2012) (requiring application for injunctive relief to be accompanied by affidavit showing a factual basis for relief requested). There is no pleading in the record in which either party claims that the other is engaging in conduct detrimental to their children's interests. There is no evidence that the trial court made any findings of fact or conclusions of law that would justify entering an injunction. 735 ILCS 5/11-101 (West 2012).

¶ 38         Under ordinary circumstances, the procedural defects preceding entry of this order would be grounds for reversal. Instead, rather than address the substance of the order and the manner of its entry, the majority concludes the order must not be an injunction because customary procedures were not followed and that the order is in the nature of "temporary relief" authorized under section 501 of the Act. 750 ILCS 5/501 (West 2012). By so recasting the nature of the order, the majority concludes that although it does restrain Catherine's and Raymond's speech and conduct, it is nevertheless "administrative" or "ministerial" in nature. Such administrative and ministerial orders are not appealable because they operate solely to regulate the procedural details of litigation and are distinguishable from traditional forms of injunctive relief because they do not affect the relations of the parties in their daily activities outside the litigation. *In re A Minor*, 127 Ill. 2d at 262.

¶ 39 The trial court's order clearly does affect the most intimate details of Catherine's relationship with her children. The order does not merely place a "condition" on or regulate aspects of pretrial preparation such as who will reside in the marital home and who will pay the bills until the property division is sorted out. It does not even address the temporary parenting schedule that was the impetus for its entry in the first place. Rather, the order places restrictions on the parties' parental rights and significantly affects the relationship of the parties in their everyday activities apart from the litigation.

¶ 40 The majority's reasoning underscores why the order is exactly what it purports to be: an effort to bring the authority of the court to bear on a parent's decision to speak to or behave toward their children in a particular way. The majority notes that parents embroiled in dissolution proceedings often behave in ways that negatively affect their children. The precise purpose of the order, therefore, is to "restrain" and "enjoin" Catherine or Raymond from engaging in such harmful speech and behavior before it ever happens. I do not know what label to place on such an order other than an injunction. And I am unaware of any authority for entering an injunction whose purpose is purely prophylactic. See *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 371 (2001) (right to injunctive relief "rests on actual or presently threatened interference with another's rights;" damage must be "likely and not merely possible").

¶ 41 Once the order is viewed as an injunction, the record reveals no basis for its entry. These dissolution proceedings had been pending for only a few months at the time the order was entered. The most substantive motion practice in the scant record before us has concerned Raymond's opposition to Catherine's request for temporary support and maintenance for herself and their three children.

¶ 42 The worst that can be said is that although Catherine and Raymond agreed on a temporary parenting schedule, their children, three girls ages 14, 12 and 10, upset with their father for leaving, refused to go along with it. In her response to Raymond's petition to set a temporary parenting schedule, Catherine represented "the minor children are currently upset with Raymond and have been extremely resistant to the encouragement by Catherine and others that they resume their relationship with their father." And, in fact, the record shows that the impetus for entry of the order was the trial court's intention to demonstrate to the children that they were required to comply with the parenting schedule the court intended to set. In addressing Catherine's objections to entry of the order, in which she raised the procedural and substantive arguments she pursues on appeal ("I'm afraid my client can't accept an injunction that doesn't allow her to speak with her children about the most important details of their life"), the court stated: "[T]hey [the children] need to understand I run this show. They do not."

¶ 43 Nothing in the record even hints that Catherine or Raymond do or intend to use corporal punishment to discipline their children, have criticized, demeaned or disparaged the other to their children, have used or intend to use nonprescription drugs in front of their children or have engaged in electronic surveillance of each other or their children. And although no reasonable person would defend such conduct, the chance that one party may engage in harmful conduct in the future–in the absence of a showing of "an ascertainable right in need of protection"–is an insufficient basis upon which to predicate an injunction.

¶ 44 Further, certain aspects of the injunction are clearly overbroad. For example, neither party may discuss "any aspect of the pending litigation with and/or in the presence of the minor children." The parties' three daughters reside with Catherine. If, as I would expect would

happen often, the children want to talk to their mother about their feelings regarding the divorce or how the divorce will affect them, Catherine must refer them to their child representative, a stranger. Or if she fails to do so, Catherine faces the prospect of a rule to show cause, for there is nothing on the face of the order that exempts willful violations from the court's inherent contempt power. Catherine is likewise prohibited from assuaging any fear or anxiety her children may express regarding who will have custody of them, interviews they may be required to participate in with the trial judge, mediators, attorneys, social workers and the like, or whether a visitation schedule will conflict with a slumber party or sporting event. If Catherine wants to take a video of a ballet recital, soccer game or school graduation, she violates the order's proscription against "[e]ngaging in any and all forms of audio and/or video recording *** regardless of whether such conduct is known ***, overt *** [or] voluntary." The record does not disclose that any concrete concern for the children's well-being prompted these broad incursions on a parent's right to care for her children.

¶ 45    It is no answer to say that the parties are entitled to seek relief from the order. ("This Order is subject to hearing upon request of either party as to any or all of the prohibitions set forth herein.") If there is no factual or legal basis for the injunction in the first place, allowing the parties to seek relief from its prohibitions on a piecemeal basis is meaningless. Such a process unnecessarily burdens the exercise of parental rights and increases the cost of litigation.

¶ 46    In its broad-based and unconditional restrictions, the order impinges upon a parent's fundamental right to care for and guide his or her children and, absent exceptional circumstances, to do so without judicial interference. See *Troxel v. Granville*, 530 U.S. 57, 65, 68-69 (2000) ("[T]he interest of parents in the care, custody, and control of their children–is perhaps the oldest of the fundamental liberty interests recognized by this Court."; "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."); *In re M.H.*, 196 Ill. 2d 356, 362 (2001). Nothing in the record even remotely suggests that Catherine (or Raymond, for that matter) is an unfit parent and, in fact, the order itself disavows any such finding. ("This Order is entered *** without any assumption to suggestion that either party will or has engaged in the conduct prohibited by this Order.") Unless a case is made that placing such conditions or restrictions on the parties are necessary to protect the best interest of their children, a parent's right to raise his or her children (*Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925)) and the freedom of personal choice in the matters of family life (*Santosky v. Kramer*, 455 U.S. 745, 753 (1982)) should not be restricted.

¶ 47    I have no doubt that the trial court was well-intentioned. I also recognize that the friction inherent in custody and visitation disputes may render it necessary for a court to intervene to protect the best interest of the children involved. But such restrictions on parental rights must be tailored to the circumstances; there is no "one size fits all." And given the practical and wide-ranging effect this order places on a parent's rights, the judicial oversight it contemplates must be based on pleading and proof of conduct warranting the drastic remedy of an injunction. Because those essential prerequisites are missing here, I would reverse.